IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

```
CHRISTOPHER PARISH, et al.,    )
                               )
Plaintiffs,                    )
                               )
vs.                            )    NO. 3:07-CV-452
                               )
CITY OF ELKHART, et al.,       )
                               )
Defendants.                    )
```

## OPINION AND ORDER

This matter is before the Court on: (1) Defendants' Motion to Dismiss, filed on February 25, 2008; and (2) Plaintiffs' Request for Oral Argument on Defendants' Motion to Dismiss, filed on April 27, 2008. For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED IN PART and DENIED IN PART**. To the extent Defendants seek dismissal of Plaintiff's Section 1983 claim alleging a due process violation, the motion is **DENIED**. In all other respects, Defendants' motion to dismiss is **GRANTED**. Therefore, the Section 1983 due process claim is the only remaining claim. Plaintiffs' request for oral argument is **DENIED**.

BACKGROUND

On September 24, 2007, Plaintiffs, Christopher Parish, his

three minor children, his fiancee and his mother, filed suit against Defendants, City of Elkhart and three former officers of the city's police department.[1] According to the allegations contained in the complaint, Christopher Parish was arrested, tried and convicted for a crime that he did not commit due to Defendants' unconstitutional acts. Parish was then sentenced to thirty years imprisonment. After serving eight years in prison, Parish was exonerated. He and his family members now seek redress for the injuries they suffered due to Defendants' alleged misconduct.

Parish brings two section 1983 claims against Defendants. Parish alleges a due process violation by being denied the right to a fair trial and also brings a Fourth Amendment claim for false arrest. In addition, Parish brings supplemental state law claims of false imprisonment, false arrest, infliction of emotional distress and malicious prosecution. Parish's family members bring derivative state law claims.

Defendants have filed the instant motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure, arguing that Plaintiffs' complaint fails to state a claim against Defendants upon which relief can be granted because the claims are barred by the applicable statute of limitations.

---

[1] Plaintiffs also brought suit against other unknown officers and Elkhart employees.

DISCUSSION

Facts

According to the allegations contained in the complaint, Michael Kershner ("Kershner") was shot in the abdomen on the evening of October 29, 1996. (Cmplt ¶ 13). Kershner falsely reported to the Elkhart Police Department that the shooting had taken place during a home invasion robbery of his mother's apartment, where he lived as well. (Cmplt ¶ 13). Kersher, who was a drug dealer, was actually shot in the parking lot outside of the apartment building. (Cmplt ¶ 14).

On the night Kershner was shot, Parish, his three children and Leticia Gray, Parish's finacee at the time, attended a family gathering in Chicago, Illinois. (Cmplt ¶ 15). On this day, all five of these individuals left Elkhart by 4 p.m., remained in Chicago for several hours, and arrived back in Elkhart after midnight. (Cmplt ¶ 15).

Almost immediately after the shooting of Kershner, Defendants, Steve Rezutko, Steve Ambrose, Tom Cutler and other law enforcement defendants decided to falsely implicate Parish and build a false case against him, with the aim of securing his false arrest and then his false imprisonment. (Cmplt ¶ 17). These Defendants used improper and suggestive interview and photo identification techniques, manipulated witnesses, and threatened or coerced witnesses. (Cmplt ¶ 18). As a result, several witnesses made a

false identification of Parish as one of the perpetrators of the crimes that supposedly took place in the apartment where Kershner and his mother lived. (Cmplt ¶ 18). The defendant officers also engaged in staging a crime scene in Kershner's mother's apartment and further fabricated, tampered with and destroyed evidence. (Cmplt ¶¶ 19, 25). This false evidence was presented at trial and led to Parish's wrongful conviction in June 1998. (Cmplt ¶¶ 19, 22). The law enforcement officer defendants kept secret and failed to disclose what they had done to violate Parish's constitutional rights or how they had done it. (Cmplt ¶ 19). Parish remained incarcerated until he was release on bond pending a new trial in July 2006 and was exonerated in December 2006. (Cmplt ¶ 22).

Legal Standard

The purpose of a motion to dismiss is to test the legal sufficiency of the complaint, not to decide the merits. *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). In determining the propriety of dismissal under Federal Rule of Civil Procedure 12(b)(6), the court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *Johnson v. Rivera*, 272 F.3d 519, 520 (7th Cir. 2001). A complaint is not required to contain detailed factual allegations, but it is not enough merely that there might be some conceivable set of facts that entitles the

plaintiff to relief. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007), abrogating in part *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A plaintiff has an obligation under Rule 8(a)(2) to provide grounds of his entitlement to relief, which requires more than labels and conclusions. *Id.* at 1965. Factual allegations, taken as true, must be enough to raise a right to relief above the speculative level. *Id.* Moreover, a plaintiff may plead himself out of court if the complaint includes allegations that show he cannot possibly be entitled to the relief sought. *Jefferson v. Ambroz*, 90 F.3d 1291, 1296-97 (7th Cir. 1996).

Federal Section 1983 Claims

In the complaint, Plaintiff asserts Section 1983 claims against Defendants alleging a due process violation by being denied the right to a fair trial as well as for a Fourth Amendment claim for false arrest.

Through the parties' briefing, it has come to light that the parties agree the Fourth Amendment claim of false imprisonment is barred by the statute of limitations and that the Section 1983 due process claim is timely. (See Pltfs resp., pp. 5-9; Defs reply, pp. 1-2). Thus, Plaintiff's Fourth Amendment false arrest claim is **DISMISSED**.

State Law Claims

Plaintiff asserts state law claims of false arrest, false imprisonment, intentional infliction of emotional distress and malicious prosecution. Defendants argue that the claims of false arrest, false imprisonment and intentional infliction of emotional distress are barred by the statute of limitations. Defendants also argue that the claim of malicious prosecution is barred by the Indiana Tort Claims Act. Each of these arguments will be addressed in turn.

> Plaintiff's claims of false imprisonment,
> false arrest and infliction of emotional
> <u>distress are barred by the two year statute of limitations</u>

A two year statute of limitations applies to Plaintiff's false arrest, false imprisonment and intentional infliction of emotional distress claims. Ind. Code § 34-11-2-4; *Johnson v. Blackwell*, 885 N.E.2d 25, 30 (Ind. Ct. App. 2008). To understand when any statute of limitations period ends, the accrual date must first be understood.

Plaintiffs have requested an oral argument to address the accrual issues; however, that is unnecessary as the issue has been decided in Indiana as a matter of law. In *Johnson* v. Blackwell, the Indiana Court of Appeals held that false imprisonment, false arrest and infliction of emotional distress claims accrue at the time of the harm, not when a plaintiff's conviction is later set

aside. 885 N.E.2d at 30. That means false imprisonment and false arrest claims accrue when the arrestee is bound over for trial and an associated claim for infliction of emotional distress accrues at the time of the arrest and imprisonment. *Id.* at 31.

Under this framework, Plaintiff's claims for false imprisonment and false arrest would have accrued on October 31, 2006. And as the complained of emotional harm caused by the officers took place as a result of Defendants' alleged pre-trial and trial actions, any claim for emotional distress would have accrued on or before Parish's 1998 trial and conviction. Because Parish did not file his complaint until 2007, nine years after his conviction, the claims for false arrest, false imprisonment and infliction of emotional distress would be outside the applicable two-year statute of limitations. This should come as no surprise, though, as Plaintiff makes no real effort to suggest otherwise. (Pls Resp. p. 9). Instead, Parish asserts his claims are timely based on the doctrines of fraudulent concealment and continuing wrong as well as the discovery rule.

In Indiana, a statute of limitations may be tolled where the defendants have engaged in fraudulent concealment. Ind. Code § 34-11-5-1. Fraudulent concealment "operates to estop a defendant from asserting a statute of limitations defense when the person, by deception or a violation of a duty, has concealed material facts from the plaintiff thereby preventing the discovery of a wrong."

*Hospital Corp. v. Hiland*, 547 N.E.2d 869, 873 (Ind. Ct. App. 1989), *aff'd*, 561 N.E.2d 758 (Ind. 1990). The concealment must be "active and intentional" which means that the defendants' conduct needs to "be calculated to mislead and hinder a plaintiff from obtaining information by the use of reasonable diligence, or to prevent inquiry or investigation." *Hildebrand v. Hildebrand*, 736 F.Supp. 1512, 1523 (S.D. Ind. 1990).

Essentially, Plaintiff argues that the doctrine of fraudulent concealment applies because "Defendants conspired to suppress from Plaintiffs exculpatory information which would have exonerated Mr. Parish," and "law enforcement Defendants kept secret and failed to disclose what they had done or how they had done it." (Pl. resp. p. 10; Cmplt ¶ 20). While these types of alleged *Brady*-based[2] wrongdoings may substantiate Plaintiff's federal due process claim, they do not trigger the doctrine of fraudulent concealment to toll the statute of limitations as to Plaintiff's state law claims.

Parish was arrested and incarcerated in 1996. There can be no question that Parish would have known at that time of his arrest and incarceration that he had been wrongfully arrested and imprisoned. Further, in 1996 Parish would have known that he was suffering emotional injuries due to the false arrest/imprisonment. Because Parish knew that he was falsely arrested, falsely imprisoned and suffering emotional injuries in 1996, he was

---

[2] See *Brady v. Maryland*, 373 U.S. 83 (1963).

-8-

equipped at that time to file suit. See e.g. *Garneau v. Bush*, 838 N.E.2d 1134, 1143 (Ind. Ct. App. 2005)(noting that "the critical event for purposes of determining whether an action was timely filed is the plaintiff's discovery of facts that should have alerted them that they have a cause of action."). Although Plaintiff disagrees with this conclusion, it squares with existing Indiana law. See *Johnson*, 885 N.E.2d at 32.

Plaintiff also seeks to save his state law claims by arguing that the doctrine of continuing wrong tolls the running of the statute of limitations. "The doctrine of continuing wrong applies where an entire course of conduct combines to produce an injury." *Palmer v. Gorecki*, 844 N.E.2d 149, 156 (Ind. Ct. App. 2006)(citation omitted). When this doctrine applies, "the statutory limitations period begins to run at the end of the continuing wrongful act." *Id.* In order for this doctrine to apply, "the plaintiff must demonstrate that the alleged injury-producing conduct was of a continuous nature." *Id.* This doctrine should be invoked when a "single act in the sequence does not produce the injury," but instead "it is the combination of acts." *Hurt v. West Lafayette Comm. School Corp.*, 450 F.Supp.2d 900, 904 (N.D. Ind. 2006). This is so because the doctrine "is not an equitable doctrine; rather, it defines when an act, omission, or neglect took place." *Garneau*, 838 N.E.2d at 1143.

Similar to Parish's *Brady*-type allegations attempting to

invoke the doctrine of fraudulent concealment, Plaintiff alleges the doctrine of continuing wrong applies because Defendants' conspired to suppress exculpatory information and continued to do so throughout Parish's post-conviction proceedings. (Pl. Resp. p. 11). However, Parish's allegations do not trigger the doctrine of continuing wrong.

The doctrine of continuing wrong "will not prevent the statute of limitations from beginning to run when the plaintiff learns of facts which should lead to the discovery of his cause of action . . .." *Id.* That is Plaintiff's problem here. When Plaintiff was arrested, he learned of facts that should lead to the discovery of a false arrest claim; when he was imprisoned, he learned of facts that should lead to the discovery of a false imprisonment claim; and during this time he learned of facts that should have lead to the discovery of an infliction of emotional distress claim. As such, Plaintiffs' claims for wrongful arrest, wrongful imprisonment and infliction of emotional distress are not saved by the doctrine of continuing wrong. See *Parks v. Madison County*, 783 N.E.2d 711, 720 (Ind. Ct. App. 2002)("Under both the 'continuing wrong' and 'fraudulent concealment' doctrines, the critical event for purposes of determining whether an action was timely filed is the plaintiff's discovery of facts that alert him that he has a cause of action.").

Finally, Plaintiffs argue that the "discovery rule" precludes

dismissal because it is not clear on the face of the complaint when Plaintiff actually discovered the wrongdoing about which he complains. Under the discovery rule, claims accrue "when the plaintiff knows or has reason to know of the injury which is the basis for his action." *Brademas v. Indiana Housing Finance Authority*, 354 F.3d 681, 685 (7th Cir. 2004)(citation omitted). Notably, this "rule does not suspend the accrual of a claim until the plaintiff experiences the entirety of consequences resulting from an injury, but only until the plaintiff has knowledge of an allegedly unlawful action." *Id.* at 686.

As discussed above, there is no question that Plaintiff knew of his alleged false imprisonment, false arrest and infliction of emotional distress prior to August 15, 2005. Indeed, he knew of it at the time of his arrest and detention. That knowledge is sufficient to trigger the discovery rule; it is inconsequential that Plaintiff failed to discover the full extent of his injuries or all of the details of Defendants' actions until a later time. *Id.*

Therefore, Parish's claims of false imprisonment, false arrest and infliction of emotional distress are barred by the applicable statute of limitations. To the extent Parish's family members make derivative claims- loss of services, loss of consortium, loss of love and affection- based upon Parish's state law claims, those

derivative claims are barred.[3]

Plaintiffs Concede that the Malicious Prosecution is Barred

Plaintiffs concede that they cannot maintain a malicious prosecution claim under the Indiana Tort Claims Act. (Surreply, p. 7). Thus, that claim is dismissed.

CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED IN PART and DENIED IN PART**. To the extent Defendants seek dismissal of Plaintiff's Section 1983 claim alleging a due process violation, the motion is **DENIED**. In all other respects, Defendants' motion to dismiss is **GRANTED**. Plaintiffs' request for oral argument is **DENIED**.

**DATED: September 5, 2008**          /s/RUDY LOZANO, Judge
                                      **United States District Court**

---

[3] Plaintiffs agree that the viability of the derivative claims are dependent on Parish's claims. (Pls Resp., fn 3.).