# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

CHRISTOPHER PARISH, *et al.*,    )
                                 )
Plaintiffs,                      )
                                 )
vs.                              )    NO. 3:07-CV-452
                                 )
CITY OF ELKHART, *et al.*,       )
                                 )
Defendants.                      )

## OPINION AND ORDER

This matter is before the Court on (1) the Defendants' Motion for Summary Judgment filed on March 16, 2009 (DE # 57) and (2) the Defendants' Motion to Strike Portions of Evidence Designated in Plaintiffs' Response to Defendants' Motion for Summary Judgment filed June 18, 2009 (DE # 75). For the reasons set forth below, the Defendants' Motion for Summary Judgment (DE # 57) is **GRANTED in part and DENIED in part** and Defendants' motions to strike (DE # 75) is **GRANTED in part** and **DENIED in part**. Accordingly, the John Doe Defendants are **DISMISSED**, any punitive damages claim against Elkhart is **DISMISSED**, and Parish's fiance's, mother's and children's claims are **DISMISSED**.

<u>BACKGROUND</u>

In 1996 Christopher Parish was arrested and subsequently convicted of the robbery and attempted homicide of Michael Kershner. In 2005, after 8 years in jail, post-conviction relief was granted and his case was dismissed. Christopher Parish, his children, his fiancé, and his mother, ("Plaintiffs") now seek relief under 42 U.S.C. § 1983 against the City of Elkhart, the County of Elkhart and former Elkhart police officers, Steve Rezutko, Steve Ambrose, and Tom Cutler ("Defendants") alleging that Parish was deprived of a fair trial because Defendants carried out and covered up an improper investigation. (Compl. ¶¶ 18, 19, 20.) Plaintiffs further allege that Detective Rezutko's supervisors knew or should have known that he regularly used improper investigatory techniques that violated suspects' constitutional rights yet did not take corrective action or provide oversight or critical scrutiny of his work. (*Id.* at ¶¶ 23, 24.)

<u>Preliminary Evidentiary Matters</u>

Defendants move to strike certain evidence from the record. The Court need only address the admissibility of two pieces of contested evidence relevant to deciding this summary judgment motion. All evidentiary issues not necessary for ruling on this motion are **DENIED** as moot.

First, Defendants ask the Court to strike certain testimony of Larry Towns. Larry Towns, a former member of the Elkhart Police

department, allegedly communicated several complaints about Detective Rezutko's misconduct to the Chief of Police. (Towns Aff. ¶¶ 5, 18.) Defendants argue that these complaints are inadmissible because they stemmed from what Towns had heard from others or what he felt to be the case. While an out-of-court statement offered in evidence to prove the truth of the matter asserted is hearsay, *U.S. v. Williams*, 133 F.3d 1048, 1051 (7th Cir. 1998), out-of-court statements are admissible for the limited purpose of the effect they have on the listener. *See, e.g., Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 430 (7th Cir. 2004). Here, Towns' testimony is offered merely to show the Police Chief's knowledge, not whether Detective Rezutko was actually conducting himself improperly. Accordingly, Defendants' motion is **DENIED** to the extent that the Court will consider this evidence to show the Police Chief's knowledge.

Second, Defendants request the Court to strike Towns' testimony that it was well-known among police officers generally and supervisory personnel in Elkhart that Detective Rezutko "rushed to judgment, manipulated evidence and witnesses, and conducted suggestive photo line-ups." (Towns Aff. ¶ 5.) This testimony would be relevant to the currently pending motion as evidence that other members of the Elkhart Police Department had knowledge of Detective Rezutko's prior misconduct. Plaintiffs, however, concede that this testimony is not admissible to prove the truth of the matter asserted. Accordingly, the Defendants' motion is **GRANTED** to the

extent that the Court will not consider this testimony for this purpose.

Facts

On October 29, 1996, Michael Kershner was shot. (Criminal Trial Transcript, *State v. Parish*, 9611 CF 58 ("Trial Tr.") at 34 (Kershner).) Kershner and the other witnesses to the shooting told police and subsequently testified at Parish's criminal trial that the following events occurred.

Kershner had been home, watching a movie with his mother, Nona Canell, and his friends Eddie Love, Jennifer Dolph, and Jermaine Bradley. (*Id.* at 17 (Kershner).) At some point that evening, two black males, both armed with guns, forced their way inside, demanding drugs, guns, and money. (*Id.* at 18, 48 (Kershner).) The apartment's occupants told the intruders that they had the wrong place, but one of the assailants fired a shot at Love, narrowly missing because Kershner pushed the gun away. (*Id.* at 20 (Kershner).) The bullet damaged the apartment wall. (*Id.* at 24-25 (Kershner).) Then one of the assailants shot Kershner in the stomach area. (*Id.* at 28 (Kershner).) The intruders then fled, taking with them a stun gun and an assault rifle. (*Id.* at 34 (Kershner).) Kershner's family and friends then carried Kershner down the stairs to the car and took him to get medical help. (Trial Tr. at 35, 65 (Kershner).)

Parish had an alibi for the time of the Kershner shooting

corroborated by numerous witnesses. (Notice of Alibi; Trial Tr. at 236-37 (Yolanda Scott); *id.* at 268-69 (Wallace Scott); *id.* at 288-91 (White); *id.* at 308-09 (Edwards); *id.* at 325-29 (Fortute); *id.* at 344-52 (Gary).) He was with his family at a gathering in Chicago. (*Id.*)

After the shooting was reported, the police secured the apartment and found no evidence that a shooting had occurred there. (Katowich Report at 2; DeJong Report at 1.) The technicians spent at least an hour in the apartment conducting an investigation, yet they were unable to locate any blood on the floor, any bullet hole in the plaster, or any spent shell casings. (DeJong Report at 2; DeJong Dep. at 65-69, 73.) Four neighbors who had been home and inside the nearby apartments were canvassed, but none had heard any gun shots. (Katowich Report at 2.)[1]

The investigation of the Kershner shooting was assigned to Elkhart Police Detective Steve Rezutko, who was assisted by Detective Ambrose and supervised by Captain Tom Cutler. (Rezutko Dep. at 75; Ambrose Dep. at 52; Cutler Dep. at 81-84.) Detective Ambrose took the statement of Jennifer Dolph and interviewed Parish. (Ambrose Dep. at 55-56; Parish Dep. at 40-44.) Detective

---

[1] Notably, after his conviction, Parish located witnesses who revealed that the Kershner shooting may actually have happened while Kershner was dealing drugs outside his mother's apartment building. (*State v. Parish*, 838 N.E.2d 495, 500-01 (In. Ct. App. 2005).) At the time of the shooting, Kershner had been on a "night pass" from juvenile detention and was not supposed to be out on the street. (*Id.* at 500 n.4.)

Ambrose was also at least partially involved in a statement by Debery Coleman where Coleman claimed that Parish's supposed accomplice, who was later exonerated by DNA evidence, admitted guilt and implicated Parish. (Coleman Aff. at ¶¶ 3-5; Statement by Debery Coleman.) Captain Cutler approved Detective Rezutko's work at the end of the investigation and does not recall doing anything else. (Cutler Dep. at 83-84.) Detective Rezutko was otherwise responsible for putting the case together for the prosecutor. (Rezutko Dep. at 75.)

Detective Rezutko arrested Parish two days after the shooting, on October 31, 1996. (Rezutko Report at 3; Parish Dep. at 28.) Parish was later charged with robbery and the attempted murder of Michael Kershner. (Order, *State v. Parish,* 9611 CF 58.) Parish was tried on June 22-24, 1998, in Elkhart Circuit Court. (Trial Tr.) The only evidence against Parish was eyewitness testimony. (Rezutko Dep. at 146.)

At the trial, Kershner, Canell, Bradley, and Dolph, all testified against Parish and identified him as one of the two people involved in the Kershner shooting. (Trial Tr. at 19 (Kershner); *id.* at 83 (Canell); *id.* at 123-30 (Bradley); *id.* at 141-42 (Dolph).) Bradley, however, testified that "he could not identify either of the perpetrators from the photos that the police showed him." (*Id.* at 132.)

At trial, Detective Rezutko testified that Parish's name came to his attention when he received a police report created by

Officer Ed Windbigler memorializing a conversation that he had with Eddie Love, a 16 year old who had witnessed the Kershner shooting. (*Id.* at 218.) Love told Officer Windbigler, "I know that I have seen these two guys in the past, I think on Sixth St. and in the area of Prarie and Middlebury. I don't know their names, but the second guy that came into the apartment looks like a guy I know (Chris Parish)." (Statement by Love dated October 29, 1996.)

Detective Rezutko testified that he read Love's statement to mean that the suspect could have been Chris Parish and concluded that he had enough evidence to see if witnesses would identify him as a suspect. (Trial Tr. at 221-22, 226-27.) Love's statement was the only information that he had prior to placing Parish's photograph in an album of mug shots. (*Id.* at 222.)

The photograph of Parish used in this album went missing before trial. (Rezutko Dep. at 206-07; Parish Dep. at 126-27.) It was a picture of Parish as a 13 year old. (Rezutko Dep. at 155.) Detective Rezutko did not know if this photo bore any resemblance to his appearance as a young man. (*Id.* at 53.) Because the original photo was missing, the jury saw a photo of Parish taken after his arrest. (Parish Dep. at 85-86, 92.)

At trial, Detective Rezutko testified that he showed Canell and Dolph this album of mug shots containing Parish's picture on the day after the crime. (Trial Tr. at 198-99) He testified that Canell and Dolph identified Parish's photo as one of the suspects.

(*Id.* at 199-200.) Dolph testified that she was not positive about the identification. (*Id.* at 143.)

At Parish's trial, Detective Rezutko testified that he showed a six-photo array to Kershner in the hospital on October 30, 1996. (Trial Tr. at 200-09.) Detective Rezutko and Kershner both told the jury that Kershner had "instantly" picked out Parish's photo. (*Id.* at 39-40 (Kershner); *id.* at 202 (Rezutko).)

In Kershner's deposition for this case, however, he testified that "Rezutko came in there and tried to ask me questions right afterwards [the shooting], but I was still out of it. It [sic] really wasn't much help." (Kershner Dep. at 16-17.) Detective Rezutko had to come back several days later to show Kershner photos because, he testified he was out of it for a couple of days. (*Id.* at 16.)

Detective Rezutko testified that the array he showed Kershner contained a recent picture of Parish. (Trial Tr. at 200-01.) When this album was introduced at trial, two photos were inverted and no explanation was offered. (*Id.* at 202.)

In his recent deposition, Kershner stated that he had signed a photo array that contained Parish's photo and that this array disappeared and was not introduced at Parish's criminal trial. (Kershner Dep. 30-31.) Kershner also testified in his recent deposition that the photo of Parish that Detective Rezutko initially showed him was actually much older than the one included

in the surviving photo spread that was used during Parish's criminal trial. (*Id.* at 19.)

Detective Rezutko also testified that he interviewed Kershner after he was released from the hospital and put that information in a supplemental report. (Trial Tr. at 208.) This report was missing and was not produced at trial. (*Id.*) The first statement in the police file from Kershner is dated January 8, 1997, two months after the shooting. (*See* Elkhart Police Department File.) Also missing was Kershner's physical description of the alleged perpetrators. (*Id.* at 51, 56.)

Detective Rezutko also testified that he showed Love a picture of Parish on November 4, 1996. (Trial Tr. at 207.) According to Detective Rezutko, Love identified Parish. (*Id.*) Love did not testify at Parish's trial.

At Love's deposition on March 12, 2009, Love testified that Detective Rezutko coerced him into identifying Parish as the perpetrator despite telling Detective Rezutko that the perpetrator was not Parish, but only looked like him. (Love Dep. at 9-15, 27-28.) According to Love, Detective Rezutko threatened him with a drug arrest if he did not cooperate. (*Id.* at 9-15.) In addition, Love testified that the police took a tape recorded statement from him which was never disclosed to anyone. (*Id.* at 27-28.) During this tape recorded session, an officer placed a gun on the table and warned him to cooperate with the police. (*Id.*) Love testified that the tape recording makes clear that he was coerced into

cooperating with the police version of the shooting. (*Id.*)

Although the jury convicted Parish based on the eyewitness testimony from the trial, Parish was granted post-conviction relief and the case was dismissed. (Order, *State v. Parish*, 9611 CF 58; *State v. Parish*, 838 N.E.2d 495 (In. Ct. App. 2005); Motion to Dismiss, *State v. Parish*, 9611 CF 58.) Moreover, after DNA evidence implicated a man named Johlanis Ervin, Kershner and Canell now believe that Johlanis Ervin's brother, Michael Ervin, may have been the accomplice, not Parish. (Kershner Aff. ¶¶ 4-5; Canell Dep. at 9, 48.)

In his recent deposition for this case, Detective Rezutko has testified that when speaking with witnesses, he took notes. (Rezutko Dep. at 85.) When he completed an investigation, he would use his notes to make reports for use by the prosecutors then throw them away. (*Id.*) And when he threw away his file, all of the notes on subjects that did not "pan out" were simply tossed and were not provided to prosecutors. (Rezutko Dep. at 85.)

Before the Parish investigation, Detective Rezutko was removed from the investigation of homicide cases because of misconduct. (Towns Aff. ¶ 4.) His former supervisor, Larry Towns, testified that he was removed because of his poor investigative work, his habit of rushing to judgment, his frequent manipulation of evidence and use of suggestive photo line-ups. (*Id.*) In fact, Towns told Chief Bechtel, the policymaker for the City for all matters relating to the handling of police investigations, specific

examples of improper investigative practices and the way in which he conducted business as a detective. (*Id.* at ¶ 18; Bechtel Dep. at 11-15, 21, 23, 37.) And Chief Bechtel testified that he does not recall taking any action against Detective Rezutko for his misconduct. (Bechtel Dep. at 44-45.)

DISCUSSION

Summary judgment motion standards are familiar. Pursuant to rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991). In deciding a motion for summary judgment, a court must consider all facts in the light most favorable to the nonmovant. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008.)

The movant has the burden to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which [the movant] believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed.R.Civ.P. 56(c)). Once the movant has met this burden, the nonmovant may not rest upon

mere allegations, but must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *Becker v. Tenenbaum-Hill Assocs.*, 914 F.2d 107, 110 (7th Cir. 1990). If a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23 (quoting Fed.R.Civ.P. 56(c)).

<u>Liability under 42 U.S.C. § 1983</u>

Parish brings claims against the Defendants under 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must prove that Defendants, acting under color of state law, deprived him of a constitutional or federal statutory right. *See Buchanan-Moore v. Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). A plaintiff's due process rights are violated where a police officer withholds exculpatory materials or information that could be used for impeachment. *Carvajal v. Dominguez*, 542 F.3d 561, 566-67 (7th Cir. 2008). Due process rights are also violated if unduly suggestive identification techniques taint a trial. *Alexander v. South Bend*, 433 F.3d 550, 555 (7th Cir. 2006).

<u>Unduly Suggestive Identification Techniques</u>

Defendants generally argue that summary judgment should be granted in their favor on the Plaintiffs' claim that unduly suggestive photo techniques tainted the trial because "the nature of the identifications made by the witnesses was disclosed to Parish, as exhibited by the trial testimony."[2] (Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defendants' Brief") (DE # 58) at p. 8.) This argument, without a case citation or further development, is not persuasive. Specifically, this argument does not address "whether the identification procedure was unduly suggestive and whether the resulting identification is reliable." *Alexander*, 433 F.3d at 555. Furthermore, this Court declines to speculate and construct Defendants' potential arguments. It is not this Court's job to sift the record and make the parties' arguments for them. *See, e.g.*, *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in" the record.) Accordingly, summary judgment in favor of the Defendants on this issue is **DENIED**.

---

[2] On several occasions, Defendants raise arguments in their reply brief not made in their opening brief. Arguments not presented in the opening brief are waived and will not be considered. *E.g., Simpson v. Office of Chief Judge of Circuit Court of Will County*, 559 F.3d 706, 719 (7th Cir. 2009).

<u>Detective Rezutko</u>

Defendants' motion requests the Court to dismiss all claims against Detective Rezutko because there is no evidence that he withheld evidence from the prosecutor. Defendants claim that the evidence shows that Detective Rezutko conducted a proper investigation. Defendants also argue that if evidence were withheld, it is not material; that is, it does not undermine confidence in the result reached by the jury.

Plaintiffs, however, have presented evidence creating material issues of fact as to whether Detective Rezutko withheld material exculpatory evidence. For example, Love testified that Detective Rezutko coerced him into identifying Parish as a perpetrator and then withheld this information. (Love Dep. at 9-15, 27-28.) Kershner also testified that details of his identification were not divulged. (Kershner Dep. at 16-17.)

In addition, Plaintiffs have presented evidence that a large amount of evidence that could have been used to challenge the eyewitness identifications was missing. (*E.g.,* Rezutko Dep. at 85, 206-07; Parish Dep. at 126-27; Kershner Dep. 19, 30-31; Trial Tr. at 208, 51, 56.) Plaintiffs also present evidence that Detective Rezutko was manipulating evidence and witnesses to frame Parish. For example, Plaintiffs have shown that Detective Rezutko coerced Love into identifying Parish, withheld details of Kershner's identification, ignored reports indicating no crime occurred at Kershner's apartment, and intentionally destroyed notes taken

during the investigation that could have contained exculpatory evidence. (Love Dep. at 9-15, 27-28; Kershner Dep. at 16-17, 19, 30-31; Rezutko Dep. at 85; Katowich Report at 1-2; DeJong Report at 1-2; DeJong Dep. at 65-69, 73.) From this evidence, a jury could conclude that missing evidence was intentionally withheld because it would undermine his case against Parish.

Taken collectively, a jury could find that, had the withheld evidence been known, it would put the whole criminal case in a different light so as to undermine confidence in the result reached by Parish's criminal jury. For example, Love's disavowal of Parish as a perpetrator would have undermined Detective Rezutko's entire case against Parish because Love provided the only link to include Parish as a suspect in the investigation in the first place.

For these reasons, Plaintiffs have presented evidence creating material issues of fact as to whether Detective Rezutko withheld material exculpatory evidence. Accordingly, summary judgment in favor of Detective Rezutko is **DENIED**.

Detective Ambrose and Captain Cutler

Defendants' motion requests this Court to dismiss all claims against Detective Ambrose, who assisted Detective Rezutko during the investigation of Parish. Defendants claim there is no evidence that Detective Ambrose excluded evidence because his only role in the investigation was taking the statement of Jennifer Dolph.

Plantiffs, however, argue and present evidence that Detective Ambrose is liable because he knew of Detective Rezutko's misconduct and "turned a blind eye." Such conduct can give rise to § 1983 liability if an officer "fails to prevent other law enforcement officers from infringing the constitutional rights of citizens" where the officer (1) "had reason to know . . . that any constitutional violation has been committed by a law enforcement official" and (2) "had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Because Defendants fail to point out that there is an absence of evidence to support this theory of liability, Defendants have failed to meet their burden on summary judgment. *See Celotex*, 477 U.S. at 325 ("[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case.")

In addition, viewing the evidence in the light most favorable to the Plaintiffs, they have raised a material issue of fact regarding whether Detective Ambrose had reason to know of Detective Rezutko's alleged constitutional violations but failed to take available preventative steps. Plaintiffs present evidence that Detective Ambrose was involved in the investigation by at least taking the statement of Jennifer Dolph and interviewing Parish. Detective Ambrose was also at least partially involved in the statement by Debery Coleman. Furthermore, a jury could also

16

conclude that Detective Ambrose was aware of Detective Rezutko's previous misconduct, which caused his removal from homicide investigations. Based on this evidence, although his involvement may have been somewhat peripheral, a jury could find that Detective Ambrose had reason to know of Detective Rezutko's alleged misconduct in this investigation but failed to take available preventative steps, such as reporting Detective Rezutko's actions to his supervisors.

For all of these reasons, summary judgment in favor of Detective Ambrose is **DENIED**.

Defendants also request this Court to grant summary judgment in favor of Captain Tom Cutler, Detective Rezutko's supervisor. Defendants argue that because Captain Cutler's only involvement was in approving the closure of the case, there is no evidence that he withheld evidence from the prosecutor.

Plaintiffs, however, argue and present evidence of a different theory of liability for Captain Cutler. They argue that he recklessly caused the alleged deprivation by turning a blind eye to a risk that Detective Rezutko was violating Parish's rights. Because Defendants fail to point out that there is an absence of evidence to support this theory of liability, Defendants have failed to meet their burden on summary judgment. *See Celotex*, 477 U.S. at 325.

In addition, viewing the evidence in the light most favorable to the Plaintiffs, they have raised a material issue of fact as to

whether Captain Cutler recklessly caused the alleged deprivation. Plaintiffs present evidence that Detective Rezutko was removed from the investigation of homicide cases because he had a habit of rushing to judgment, manipulating evidence and using suggestive identification techniques. (Towns Aff. ¶ 4.) Based on this, a jury could find that Captain Cutler knew of Rezutko's prior misconduct and substantial risk that he would repeat it, yet provided no real supervision over Detective Rezutko's investigations.

For the above stated reasons, summary judgment in favor of Captain Cutler is **DENIED**.

### John Does

Defendants claim that dismissal of the John Does is appropriate because Plaintiffs have not subsequently named or served any additional defendants. Plaintiffs do not dispute this. Accordingly, summary judgment in favor of these defendants is **GRANTED** and they are **DISMISSED**.

### Qualified Immunity

Defendants argue that they are entitled to qualified immunity. According to the Defendants, no constitutional violation occurred and even if constitutional violations occurred, it was not clear that the officers were expected to disclose any of the allegedly withheld evidence.

"Determining whether a defendant law enforcement officer is entitled to qualified immunity involves a two-step analysis." *Carvajal v. Dominguez*, 542 F.3d 561, 566 (7th Cir. 2008). First, the Court must determine whether the facts, viewed in the light most favorable to the plaintiff, show that an officer violated a constitutional right. *Id.* Second, the Court must examine whether the right was clearly established at the time the conduct leading to the alleged constitutional violation took place. *Id.*

Here, if the evidence is viewed in the light most favorable to the Plaintiffs, qualified immunity is not available for Detective Rezutko, Detective Ambrose, or Captain Cutler. First, as discussed above, Plaintiffs have presented evidence of a constitutional violation. In addition, the violations at issue-withholding exculpatory evidence and using flawed identification procedures-were clearly established long before the Parish investigation. *Rojas v. Iannatto*, No. 01 Civ. 9131 (NRB), 2003 WL 169798, *4 (S.D.N.Y. Jan. 24, 2003)("[A] criminal defendant's right not to be subjected to unduly suggestive identifications has been the law since 1977")(citing *Manson v. Brathwaite,* 432 U.S. 98 (1977)); *Newsome v. McCabe*, 256 F.3d 747, 752-53 (7th Cir. 2001) (holding that it was clearly established by 1979 that police could not withhold from prosecutors exculpatory information). Accordingly, summary motion in favor of Defendants on this issue is **DENIED**.

*Municipal Liability*

Defendants challenge Plaintiffs claim that Elkhart is liable because a constitutional violation resulted from Elkhart's policy or practice of failing to train its police officers. Defendants argue that there is no evidence of a custom or policy of improper training based on an express policy or a widespread practice. Defendants also argue that there is no evidence "of any Elkhart official with final policy-making authority who caused the constitutional violations alleged by Parish." (Defendants' Brief at p. 15.)

Plaintiffs, however, have presented evidence of a policy based on the decision of the policymaker to not provide training despite knowledge of a pattern of misconduct likely to result in a violation of constitutional rights. *See, e.g.*, *Canton v. Harris*, 489 U.S. 378, 390 (1989) (finding "the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury" where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need"). That is, Plaintiffs presented evidence that Chief Bechtel, the policy maker of Elkhart for police investigatory matters, knew of a Detective Rezutko's habitually improper investigative practices and does not recall taking any

action. (Towns Aff. ¶¶ 4, 18; Bechtel Dep. at 11-15, 21, 23, 37, 44-45. ) From this, viewing the evidence in the light most favorable to the Plaintiffs, a jury could find Chief Bechtel was deliberately indifferent to the need for more training because that the need for more or different training was so obvious and the inadequacy was so likely to result, yet he did nothing. Accordingly, summary judgment in favor of the Defendants is **DENIED**.


### Derivative Plaintiffs

Defendants argue that they are entitled to summary judgment on Christopher Parish's children's, fiancé's, and mother's claims against Defendants for deprivation "of the love, affection and companionship" of Parish. (Compl. ¶¶ 6-8, 28-40.) Citing *Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005), Defendants argue that summary judgment in their favor is appropriate because Plaintiffs cannot show that Defendants' actions were directed at Parish's relationship with them.

Plaintiffs do not even contest that Parish's fiancé's claim or Parish's mother's claims should survive. Accordingly, summary judgment in favor of the Defendants on Parish's fiancé's claim and Parish's mother's claim is **GRANTED** and those claims are **DISMISSED**.

With respect to Parish's children's claims, Plaintiffs produce no evidence, but rather argue that they need not show that Defendants' actions were directed at Parish's relationship with his children because *Russ* is inapplicable. They argue that the holding

in *Russ* was specifically limited to adult children and that, citing Central District of California and Ninth Circuit cases, minor children have a protected liberty interest. Plaintiffs also argue that Supreme Court case law does not require the Parish children to demonstrate that Defendants' actions were specifically aimed at interfering with their relationship with their father because there is evidence that Defendants' actions towards Parish were undertaken with malice and willfulness.

Plaintiffs arguments, however, are not persuasive. The Supreme Court has made clear that the "guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 330 (1986) (emphasis in original). In contrast, "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Id.* at 328 (emphasis in original). And although the Seventh Circuit has not ruled directly on this issue, the language in the *Russ* decision made no distinction between adult or minor children when stating that "finding a constitutional violation based on official actions that were not directed at the parent-child relationship would stretch the concept of due process far beyond the guiding principles set forth by the Supreme Court." *Russ*, 414 F.3d at 790. Furthermore, in *Estate of Perry v. Boone County Sheriff*, Judge McKinney of the Southern District of Indiana considered this issue and extended the *Russ* decision to grant

22

defendants' summary judgment claim and dismiss minor children's §1983 claims. *Estate of Perry v. Boone County Sheriff*, No. 1:05-cv-1153, 2008 WL 694696, at *11-12 (S.D. Ind. Mar. 12, 2008) ("Plaintiffs have not presented any evidence, much less even alleged, that the actions of the Defendants were specifically directed at disrupting the familial relationship.").

Plaintiffs' argument that the Ninth Circuit does not require a plaintiff to show intention to interfere with familial companionship is not binding on this Court and is unpersuasive in light of the Supreme Court and Seventh Circuit precedent on this issue. That is, without showing that an official acted with more than negligence in causing the children's alleged deprivation, "the Due Process Clause is simply not implicated." *Daniels*, 474 U.S. at 328. Notably too, just because Defendants may have acted with malice or willfulness towards Parish, that does little to establish Defendants' intent towards the children's alleged constitutional deprivation.

Here, Plaintiffs have not presented any evidence that the Defendants acted with more than negligence in disrupting the parent-child relationship. Accordingly, summary judgment in favor of the Defendants on the children's claims is **GRANTED** and those claims are **DISMISSED**.

<u>Punitive Damages</u>

Defendants argue that the evidence does not support an award of punitive damages against any of the Defendants. Regarding Elkhart, Defendants argue that punitive damages are not available against a municipality. Defendants also argue that with respect to the other defendants there is no evidence which raises a material question of fact regarding aggravating circumstances or the reckless or callous nature of the defendants' actions.

"A jury may award punitive damages against persons in § 1983 actions when it finds conduct motivated by evil intent or involving reckless or callous indifference to the federally-protected rights of others." *Erwin v. Manitowoc*, 872 F.2d 1292, 1299 (7th Cir. 1989). Although, "[e]valuations of motive and intent are generally inappropriate on a motion for summary judgment," there is "an exception to this rule where a plaintiff fails to produce evidence raising a material question of fact regarding aggravating circumstances or the reckless or callous nature of the defendant's actions." *Kyle v. Patterson*, 196 F.3d 695, 698 (7th Cir. 1999).

Regarding punitive damages against Elkhart, Plaintiffs agree that they are not appropriate. Therefore, any punitive damages claim against Elkhart is **DISMISSED**.

Summary judgment against the remaining Defendants, however, is not appropriate. As discussed above, Plaintiffs have set forth evidence raising a material issue of fact as to whether Detective Rezutko, Detective Ambrose, and Captain Cutler knowingly or

recklessly violated Parish's constitutional rights. Therefore, material issues of fact remain as to whether the individual defendants' actions were reckless or callous in nature. *See, e.g.*, *Fitzpatrick v. Ft. Wayne*, No. 1:07-cv-259, 2009 WL 735025, *10 (N.D. Ind. Mar. 19, 2009)(finding it "inappropriate to grant summary judgment on the claim of punitive damages" where there is a question of fact whether officer arrested plaintiff despite knowledge of exculpatory evidence and without probable cause). Therefore, summary judgment on punitive damages in favor of Detective Rezutko, Detective Ambrose, and Captain Cutler is **DENIED**.


CONCLUSION

For the reasons set forth above, the Defendants' Motion for Summary Judgment (DE # 57) is **GRANTED in part and DENIED in part** and Defendants' motions to strike (DE # 75) is **GRANTED in part** and **DENIED in part**. Accordingly, the John Doe Defendants are **DISMISSED,** any punitive damages claim against Elkhart is **DISMISSED**, and Parish's fiance's, mother's and children's claims are **DISMISSED**.



DATED:  January 20, 2010          /s/RUDY LOZANO, Judge
                                  United States District Court