```
              IN THE UNITED STATES DISTRICT COURT
         NORTHERN DISTRICT OF INDIANA, SOUTH BEND DIVISION
CHRISTOPER PARISH,              )
                                )
          Plaintiff,            )     Judge Lozano
                                )
          v.                    )     Case No. 07-0452
                                )
CITY OF ELKHART et al.,         )
                                )
          Defendants.           )     JURY TRIAL DEMANDED
```

**PLAINTIFF'S MOTION TO RECONSIDER
REFERENCES TO COOPER AND THE DNA RESULTS**

Plaintiff appreciates the Court's invitation to submit his position in writing for the Court's consideration.

### I.   THE DNA EVIDENCE IS RELEVANT TO DAMAGES

As the Court noted at the hearing, it had not yet had an opportunity to think through the issue of damages, and thus wanted to review the case law and think about the issue.  The Court's instincts were correct.  As discussed below, courts considering wrongful conviction civil rights cases have repeatedly held that DNA evidence tending to bear on innocence is admissible if for no other reason, then on the question of damages.

### A.   PLAINTIFF POSSESSES EVIDENCE THAT SUPPORTS HIS INNOCENCE

The DNA from the hat worn by the attacker matched a man named Jolanis Ervin.  The hat had a big "J" on it (for Jolanis).  Jolanis and Micheal Ervin strongly resemble the victims' initial descriptions, and the victims testified at their depositions that they now believe that the culprits were Jolanis and Michael

Ervin, not Parish and Cooper. The theory that was pressed by the State at trial has been proven false -- if not totally so, then in substantial part.

If Jolanis and Michael committed the crime, rather than Parish and Cooper, this is evidence of Plaintiff's innocence. It does not conclusively prove Plaintiff's innocence, but it is undoubtedly proof on that issue, and strong proof at that.

### B.  EVIDENCE TENDING TO SHOW INNOCENCE IS ADMISSIBLE IN THIS CIRCUIT ON THE QUESTION OF DAMAGES

An innocent man suffers in prison to a far greater degree of magnitude than someone who did the crime. Even if not admissible on liability, damages can be a sufficient reason alone to admit the evidence (subject of course to a limiting instruction to the jury as to the purposes for which it could be considered).

Strikingly on point is the case of Mayes v. City of Hammond, cited to this court by Defendants' own motion *in limine*. Defendants had cited an earlier version of the case for the proposition that the DNA should be barred.

However, in a subsequent ruling that same year, Magistrate Judge Cherry reconsidered that ruling, and expressly allowed in the DNA evidence tending to show innocence. Judge Cherry's conclusion applies just as well here:

> In contrast [to liability arguments], the question of Mayes' innocence is directly relevant to his damages, which, as Mayes explains, are "premised on [Mayes'] suffering as an innocent man wrongly deprived of his liberty," and which was never considered by the Court in its earlier order. [The DNA evidence] will be admitted solely on the issues of Mayes' damages.

Mayes v. Hammond, 2006 WL 548725, at *9 (N.D.Ill. July 21, 2006)

(ordering the appropriate limiting instruction).  See also Gauger v. Hendle, 349 F.3d 354, 362 (7th Cir. 2004) ("A successful tort plaintiff is entitled to all damages that are a foreseeable consequence of the tort, and we have said that this principle is equally applicable to constitutional torts"); Anderson v. City of Chicago, 2003 WL 1731846, at *4 (N.D. Ill. March 31, 2003) ("'mental abuse, fright and concern' are . . potential damages" under section 1983).

Other courts have come to the same conclusion.  For example, in Lopez v. City of Chicago, the court explained:

> We agree with Lopez that evidence that shows that another person confessed to the crime and that the charges against Lopez were dropped are relevant to allow an inference that he was innocent and thus suffered the anguish during detention that an innocent person would suffer when wrongfully accused of a crime.

Lopez v. City of Chicago, 2005 WL 563212, at *8 (N.D. Ill. March 8, 2005).  See also Patterson v. Burge, 2007 WL 1498974, at *2 (N.D. Ill. May 17, 2007) (Section 1983 plaintiff's innocence potentially admissible to establish damages); Carter v. City of Philadelphia, 2000 WL 1016653 at *2 (E.D. Pa. July 12, 2000) ("[T]he issue of whether or not a civil [§ 1983] plaintiff committed the underlying criminal act is central to the measure of damages for a wrongful imprisonment claim. ... The Court believes that, presented with relevant evidence, a reasonable jury could conclude that an innocent person serving a jail term is likely to feel more emotional anguish than a guilty person who knows that he, in fact, committed the crime, but may have an avenue of relief available to him because of police

misconduct."); Newsome v. McCabe, 2002 WL 548725, at *6 (N.D. Ill. April 4, 2002) (excluding evidence of plaintiff's innocence "would have invited the jurors to draw the impermissible inference that he was actually guilty, and, thus, absolve defendants of any misconduct" and any improper use of the evidence could be cured with a limiting instruction).[1]

## II.  REFERENCES TO THE COOPER IDENTIFICATION CANNOT BE APPROPRIATELY BARRED AT THIS TRIAL

Plaintiff understands the desire to simply and streamline the trial.  However, Plaintiff respectfully submits that it will be impossible to try this case in anything approaching fairness to both sides if the Plaintiff has to try to excise from the evidence the existence of the person (Cooper) who supposedly committed the shooting with the Plaintiff.

Parish and Cooper were charged with the same crime, based on identifications by the same police officer, from the very same victim.  Their stories are two halves of a whole.

Moreover, the Cooper identification was introduced at Parish's trial to bolster the case against Parish.  It was part of the evidence against him.  Evidence that undermined that identification falls under Brady.  See Manning v. Miller, 355 F.3d 1028, 1033 (7th Cir. 2004) (inducing witnesses to lie and/or

---

[1] Back when the Court was closer to the evidence in the context of deciding summary judgment, it considered the DNA to be a relevant part of the record. Mem. Op. at 10 ("Moreover, after DNA evidence implicated a man named Johlanis Ervin, Kershner and Canell now believe that Johlanis Ervin's brother, Micheal Ervin, may have been the accomplice, not Parish.").  There is no reason for a contrary conclusion at trial.

falsely identify plaintiff forms the basis of a Brady claim); Jones v. City of Chicago, 856 F.2d 985, 995 (7th Cir. 1988) ("information undermining the credibility of a government witness is within the scope of Brady's rule."); Dominguez v. Hendley, 545 F.3d 585, 590-91 (7th Cir. 2008) (withholding evidence of how victim was manipulated to identify plaintiff establishes a due process violation); Newsome v. McCabe, 319 F.3d 301, 305 (7th Cir. 2003) ("the constitutional violation justifying an award of damages is not the conduct of the lineups but the concealment of evidence about them").

In Plaintiff's view, the odds that the door will not be opened are nil. The result will be unfair to Plaintiff for this reason: if Cooper references come in only after the door is adjudged open, some of the witnesses may have already testified. At that point, Plaintiff will be unfairly deprived of their testimony on the subject, unless Defendants contemplate elongating the process by calling the witnesses back to the stand, which no one views as desirable.

The best and most just result is to simply allow the evidence in. When it comes down to it, Defendants have never really offered any real *reason* why references should be barred, other than potentially shortening the trial by a marginal amount. Defendants argued "prejudice," but as the Court rightly pointed out, prejudice does not mean irrelevant, and as discussed below, this is evidence is relevant. At bottom, they have no persuasive argument that anything about Cooper is *unfairly* prejudicial. Put

simply, it is not.  See United States v. Suggs, 374 F.3d 508, 516 (7th Cir. 2004) ("[W]e have acknowledged that most relevant evidence, by its very nature, is prejudicial, only unfairly prejudicial evidence must be excluded.  Evidence is unfairly prejudicial only if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented").

### A. PLAINTIFF'S PROFFER OF ADMISSIBLE PURPOSES FOR REFERENCES TO THE COOPER IDENTIFICATION

Turning to specific examples, Plaintiff has fashioned the following proffer of ten relevant purposes for which references to the Cooper identification would be admissible.  They are as follows.

#### 1. The Victims Are The Key Defense Witnesses, And The Cooper Identification Seriously Undermines The Victims' Credibility

Rezutko created witness statements claiming that the victims were "very certain" about their identification of the other assailant (Cooper).  They proceeded to testify about their identifications not only at Cooper's trial, but at Parish's criminal trial, thereby bolstering themselves as witnesses: confident that they got the right guys.[2]

Years later, at their civil depositions in this case, they have admitted that they lied and Rezutko lied about the identification of the other assailant (Cooper).  They have now

---

[2] The criminal trial transcript is a trial exhibit, as are other documents supporting the statements contained in this submission.  The trial exhibits are incorporated herein to preserve the record for appeal.

admitted under oath that they were never sure, and that they affirmatively told Rezutko that they were not sure. According to their depositions, Rezutko had told them "don't worry, we got the right guys," and denied their pleas for a lineup so they could be sure.

None of this was known to Parish. It is extremely exculpatory. It shows that the victims were literally willing to lie about the identifications in this case because Rezutko told them they got the right guys. To deny Parish the ability to prove it as a basis for his Brady claim would be fundamentally unfair. Giglio v. United States, 405 U.S. 150 (1972) ("When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within [Brady]").

### 2. The Cooper Identification Demonstrates That Rezutko Used Certain Practices With These Same Victims That Are Missing In Plaintiff's Identification

For the Cooper identification, Rezutko obtained signed photo-identifications on 6-person photospreads from the primary victims (Kershner and Cannell). For the Parish identification, there are no such signed photo-identifications. Rezutko has no explanation for the difference, i.e., why the signed photo identifications are missing for Parish.

If Plaintiff is not permitted to demonstrate that Rezutko obtained signed photo-identifications for the Cooper identification, he will be unfairly prejudiced. This was the very same shooting, and the very same people. Where are the

signed Parish identifications? This powerful Brady argument is neutered unless Plaintiff is permitted to establish that Rezutko had the means and opportunity to obtain the signed identifications (Cooper's) when he wanted to.

### 3. The Victim's Testimony About Rezutko's Tactics With Respect To the Cooper Identification Is Classic FRE 404(b) Evidence

The victim's descriptions of Rezutko's tactics with respect to the Cooper identification is classic FRE 404(b) evidence: absence of mistake, pattern, plan, scheme, design, and motive. Wilson v. City of Chicago, 6 F.3d 1233, 1238 (7th Cir. 1993) (evidence of prior bad acts is admissible for several reasons, including to show "intent, opportunity, preparation, and plan").

Often the debate is whether other tactics are too remote to be relevant here. This case could not be any closer: it is the very same shooting investigation. The tactics were employed on the very same witnesses who allegedly identified Plaintiff. It would be impossible to come up with a hypothetical where the FRE 404(b) evidence was closer than that. If ever FRE 404(b) applied, it would have to be a case where the same victims allege misconduct by the same police officer who obtained both identifications in the same shooting investigation. Wilson, 6 F.3d at 1238 ("While the judge was far too generous in allowing the defendants to present evidence, he was far too chary in allowing the plaintiff to present evidence. . . If Burge had used an electroshock device on another suspect only days previously, this made it more likely -- the operational meaning of 'relevant'

8

-- that he had used it on Wilson" under multiple FRE 404(b) exceptions).

### 4. The Cooper Identification Demonstrates That Rezutko Uses Suggestive Photo-Arrays, Filling A Key Gap Because The Array Used Against Plaintiff Is Missing

On its face, the Cooper photo-spread is very suggestive. The pictures look different. For Parish, the photo-spreads that Dolph and Canell allegedly identified are gone: the only thing that remains are 3 photos from each. If Plaintiff is not allowed to show that Rezutko created suggestive photo-spreads in the same case, he will be unfairly deprived of evidence relating to his due process claim. Newsome v. McCabe, 319 F.3d 301, 302-05 (7th Cir. 2003) ("liability is under the due process clause because [defendants] concealed exculpatory evidence -- the details about how they induced the witnesses to finger Newsome... Newsome's lawyers needed, but did not receive, information vital to probe whether manipulation occurred").

### 5. If Plaintiff Cannot Reference Cooper, He Will Be Deprived Of The Ability To Explain Any Context For The Testimony Defendants Themselves Want To Introduce From Cooper's Trial

The Defendants have persuaded the Court to admit Eddie Love's identification of Parish made at the Cooper trial. The Court ruled that the parties should refer to the testimony as having been given under oath, and leave it at that.

Defendants should not have been permitted to have it both ways. They get the benefit of Love's testimony from the Cooper trial, but Plaintiff does not get to explain any of the

9

circumstances of why Love might have given that testimony in the context of Cooper's prosecution, including everything about the testimony that was false. Without being able to go anywhere near the Cooper identification, Plaintiff will not be able to even begin to try to explain the problems with Love's testimony given in the Cooper case.

Again, the defense should not have asked to have it both ways. Having obtained the extraordinary result of excising every reference to Cooper no matter what it was offered for, Defendants went overboard in also asking to enjoy the benefit of the testimony at the Cooper trial. Are Defendants proposing to redact the word "Cooper" from the Cooper transcript when Love says (falsely) that it was "Cooper and Parish." As it stands, the ruling is unworkable and unfair.

### 6. The Cooper Identification Constitutes Highly-Relevant Impeachment Evidence

Plaintiff should be able to ask Canell and Kershner (the victims) if they would lie about an identification if Rezutko told them they got the right guy. If they deny that, the impeachment would be that (by their own admission) they knowingly and intentionally lied about Cooper *in the very same case.* That is devastating impeachment; barring Plaintiff from eliciting it would be error.

Similarly, if Rezutko denies that he denies witnesses the right to live lineups when they tell him they are not sure, Plaintiff should be permitted to impeach him with this evidence. Likewise, if Rezutko denies that he tells witnesses not to worry

about any uncertainty in their identifications because the police got the right men, this evidence would also impeach him. There is no good argument for preventing Plaintiff that impeachment.

### 7. Absent The Ability To Explain The Cooper Identification, The Ability To Use The Chancy Stewart Memo As Brady Material Is Nullfied

A memo relating to the investigation was discovered in this civil case that had never been produced to Parish's counsel in the criminal proceedings. That memo contained information from Chancie Stewart, who supposedly told the police that the other assailant was not Cooper, but a boy named William. Supposedly, William committed the crime with Rezutko's other suspect, Parish.

This memo and this tip were hidden from Parish's criminal defense. Parish was thus denied Brady material that would have proved the criminal case presented against him was a lie. Moreover, Rezutko has no explanation for what investigation he did with this information, what he learned, and where this tip took him. All of this is legitimate inquiry, and all of it supports Plaintiff's Brady claim.

### 8. Absent References To Cooper, Plaintiff Will Be Unable To Explain The Debery Coleman Misconduct

Mr. Coleman has submitted an affidavit (relied upon in the Court's summary judgment opinion) alleging that Rezutko and another police officer basically put him up to lie about Parish, and to claim falsely that Parish and Cooper shot the victims. Rezutko and the other officer were speaking to Mr. Coleman in the context of trying to get Coleman to be a "jailhouse snitch" on Mr. Cooper. If references to Cooper are deleted,

11

      **9.    It Will Be Impracticable To Try To Redact Cooper's Name From The Documents For The Jury's Consideration Given The Way In Which Cooper And Parish Are Repeatedly Listed Together**

There are numerous police reports that reference Parish and Cooper together. Given how intertwined they are as co-assailants, they are often grouped together in the same context and same sentence. The jury is going to be more than a little confused by attempting to redact Cooper's name. The danger of unfair prejudice will run against Plaintiff, who has the burden of proof.

      **10.    Section 1983 Due Process Claims Are Evaluated In The Context Of The Underlying Criminal Trial, And The Cooper Identification Was A Significant Part Of Parish's Criminal Trial**

The Cooper identification was used against Parish at his criminal trial. Parish's criminal jury heard that the victims were able to identify both assailants. A due process claim is evaluated in the context of whether what was (allegedly) withheld would have made a material difference to the outcome. See United States v. Agurs, 427 U.S. 97, 112-13, 96 S.Ct. 2392, 2402 (1976) ("the [withheld evidence] must be evaluated in the context of the entire record"). It will be impossible to make that evaluation if the jury is not permitted to consider the Cooper identification, as well as the Brady material that would have borne on it.

**B.   IN THE BALANCING CONTEXT, DEFENDANTS HAVE FAILED TO ARTICULATE ANY REASON WHY REFERENCES TO COOPER SHOULD BE BARRED**

As stated, the foregoing constitutes all kinds of reasons why Plaintiff's case would be unfairly gutted if Defendants were permitted to sterilize the record in the manner contemplated by the Defendants.  Indeed, the investigation of this shooting lasted from October 29, 2006 all the way through the end of January 1997, but Rezutko claims to have spend a grand total of one week investigating Plaintiff.

As is to be expected, there are all sorts of relevant topics in the months that followed.  The problem is, they make no sense absent context to explain that there was an investigation of the co-Defendant.

Meanwhile, Defendants have failed to explain even once why they would be unfairly prejudiced if Cooper references came in.  The trial might be rendered slightly shorter, but that is not a reason to deny Plaintiff justice.

In sum, it is not like the "Cooper investigation" is some attenuated side-show: this is the same investigation of the same shooting by the same police officers involving the same evidence, the same victims, and the same identifications.  This was part of the summary judgment ruling, and it is part of the trial by any fair calculation.

**Conclusion**

At an absolute minimum, the DNA evidence, coupled with the victims' testimony that they believe that Ervin brothers are responsible for the crime, is relevant to the issue of innocence, which is relevant to the question of damages.

Independently, references to Plaintiff's co-Defendant cannot be fairly excised from the trial.  It was all part of the same investigation, and Defendants have articulated no reason why references should be barred.  Conversely, that result would be extremely unfair to Plaintiff.


                                        Respectfully submitted,


                                        S/Jon Loevy
                                        Attorney for Plaintiff

Arthur Loevy
Jon Loevy
Heather Lewis Donnell
Pier Petersen
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900

**CERTIFICATE OF SERVICE**

I, Jon Loevy, an attorney, certify that on October 18, 2010, I delivered by electronic means a copy of the attached Response to all counsel of record.


                                        S/Jon Loevy