IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA, SOUTH BEND DIVISION

| | | |
|---|---|---|
| CHRISTOPER PARISH, | ) | |
| | ) | |
| Plaintiff, | ) | Judge Lozano |
| | ) | |
| v. | ) | Case No. 07-0452 |
| | ) | |
| CITY OF ELKHART et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT
OF HIS MOTION FOR ATTORNEYS' FEES AND COSTS**

Plaintiff, by his counsel, respectfully submits the
following Memorandum in support of his motion for attorneys' fees
and costs.

### Introduction

Following three years of litigation and a seven day trial,
the jury found that Defendant Steve Retzuko violated Plaintiff
Chris Parish's constitutional right to a fair trial, resulting in
eight years of wrongful incarceration.  The jury further found
against the City of Elkhart on the _Monell_ claim, determining that
the municipal policies and practices were responsible for
Plaintiff's injuries.  The jury awarded $73,125 in compensatory
damages, and an additional $5,000 in punitive damages.

The law in this Circuit is very clear that when a party
prevails in a civil rights action, as Plaintiff did here, the
prevailing attorneys are entitled to recover their reasonable
lodestar for the services they provided.

That conclusion is particularly appropriate here.  From an
_ex ante_ perspective, this Section 1983 case was extremely risky

and uncertain.  Wrongful conviction cases comprise a very specialized federal practice area, requiring mastery of complex constitutional issues and trial practice skills, and there are very few firms able or willing to risk the massive time and resources required to take on such undertakings.

Undeterred by the long odds, Plaintiff's counsel proceeded to litigate this case as aggressively as a case can be litigated, investing all of the considerable time and cash necessary to win. In the process, Mr. Parish was provided with representation on par with the type of service available to clients of the most distinguished large law firms (at which most of Plaintiff's counsel used to work before pursuing a civil rights practice). Having prevailed on his legal claims, Plaintiff and his attorneys are entitled to recover their statutory fees.

## I.   Legal Standard For Adjudicating Plaintiff's Fee Petition

Given the favorable jury verdict, Plaintiffs' lawyers, Loevy & Loevy and The William Hodes P.C. (hereafter "Plaintiff's counsel"), are entitled to attorneys' fees as the prevailing party under 42 U.S.C. § 1988. Riverside v. Rivera, 477 U.S. 561, 578 (1986) (fee awards are designed "to encourage the bringing of meritorious claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel"). Under familiar lodestar principles, the amount of the fee award is calculated by multiplying reasonable hours times hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

The lodestar is presumptively an appropriate measure of the

2

fee award.  <u>Blum v. Stenson</u>, 465 U.S. 886, 897, 104 S.Ct. 1541,
79 L.Ed.2d 891 (1984).  As the Supreme Court has clarified, this
"strong presumption that the lodestar figure. . . represents a
reasonable fee is wholly consistent with the rationale behind
[§1988]."  <u>Blanchard v. Bergeron</u>, 489 U.S. 87, 95 (1989).

In this case, Plaintiffs' lodestar is justified, and should
be granted for the reasons discussed below.

## II.  The Fact That Plaintiff Is Seeking A New Trial On Damages Does Not Deprive Him Of Prevailing Party Status

Although his victory on liability stands as unchallenged
(Defendants did not file a post-trial motion), Plaintiff has
moved for a new trial on damages.  That said, the reality that
the jury's damage award was insufficient does not deprive
Plaintiff of prevailing party status, particularly given the
importance of the constitutional rights he vindicated at trial.
As the Seventh Circuit has explained:

> Moreover, we do not agree that the degree of Robinson's
> success in the litigation required the district court
> judge to lower the fee award.  After the second trial,
> judgment was entered in favor of Robinson on both
> counts against both defendants, and he was awarded
> $25,000 in compensatory damages and $250,000 in
> punitive damages.  The City argues that this minimal
> recovery did not constitute success warranting an award
> of the full lodestar amount, especially considering
> that Robinson asked for more.  But $275,000 is hardly
> minimal, and in any event the vindication of Robinson's
> constitutional rights cannot be valued solely in
> monetary terms.  <u>City of Riverside v. Rivera</u>, 477 U.S.
> 561, 574-77 (1986).  He effectively persuaded a jury
> that a significant number of City of Harvey officials
> conspired to plant a gun at the crime scene-a victory
> that serves the public interest by exposing to light

3

> disturbing police malfeasance and grave municipal
> institutional failures, and one that will presumably
> help to deter future constitutional violations by the
> City's officers.   These achievements are anything but
> minimal.

Robinson v. Harvey, 489 F.3d 864, 872 (7th Cir. 2007).

Nor does it matter that this Petition seeks more in fees than the jury's award.  It is well-settled that there is no "proportionality" requirement in civil rights cases.  That is, even a verdict of approximately $75,000 can support a significantly higher attorneys' fee award, particularly in a case involving proven police misconduct:

> Unlike most private tort litigants, a civil rights
> Plaintiff seeks to vindicate important civil and
> constitutional rights that cannot be valued solely in
> monetary terms.  And Congress has determined that the
> public as a whole has an interest in the vindication of
> the rights conferred by the statutes enumerated in
> §1988, over and above the value of a civil rights
> remedy to a particular plaintiff.  Regardless of the
> form of relief he actually obtains, a successful civil
> rights plaintiff often secures important social
> benefits that are not reflected in nominal or
> relatively small damage awards. . . In addition, the
> damages a plaintiff recovers contributes significantly
> to the deterrence of civil rights violations in the
> future.  This deterrent effect is particularly evident
> in the area of individual police misconduct. . .

Riverside v. Rivera, 477 U.S. 561, 574-81 (1986).

The Rivera Court cited the Senate Report accompanying §1988 in clarifying that winning civil rights lawyers are to be paid "for all time reasonably expended on a matter" even when damage awards are relatively small.  Id.  The Court explained: "Because

damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief."

Finally, it also does not matter that Plaintiff did not win every battle along the way.  Kurowski v. Krajewski, 848 F.2d 767 (7th Cir. 1988) ("That the lawyers spent some time in blind alleys is irrelevant; this is inevitable, and the hourly rate reflects the fact that not all time is equally productive"). Indeed, dating all the way back to Hensley, the Supreme Court has been very clear that a prevailing party is entitled to an award of fees for "all time reasonably expended in pursuit of the ultimate result achieved."  461 U.S. at 431 ("where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee").

Where, as here, Plaintiff obtained an overall victory on liability, he is entitled to the reasonable lodestar.  See Jaffee v. Redmond, 142 F.3d 409, 414 (7th Cir. 1998) ("If a plaintiff ultimately wins on a particular claim, she is entitled to all attorney's fees reasonably expended in pursuing that claim"). The Seventh Circuit continues to subscribe to this view. Gautreaux v. Chicago Housing Auth., 491 F.3d 649, 661-62 (7th Cir. 2007) ("So long as the plaintiffs' lawyers' activities are factually related to issues on which the plaintiffs have achieved [success] and the work was reasonably calculated to result in relief, the district court may grant attorneys' fees"); see also

5

Buffington v. Baltimore County, 913 F.2d 113, 128 n.12 (4th Cir. 1990) ("Section 1988 rewards a plaintiff who ultimately prevails--who wins the war--without deducting for lost battles along the way").

### III. The Hours Spent In This Case Were Reasonable And Should Be Approved

In total, Plaintiff's counsel seek compensation for less than a thousand billable hours.[1] The amount of time spent is documented in Plaintiff's counsel's time sheets, attached hereto as Group Exhibits A through E.

Proving a violation of Plaintiff's constitutional rights was no easy task, and it was hardly clear before discovery that Plaintiff could even overcome summary judgment, much less persuade a jury. Absent any direct evidence in Plaintiff's favor, it took a lot of hard work on the part of Plaintiff's counsel to build a successful circumstantial case. Utilizing comprehensive discovery -- including multiple waves of Interrogatories and document requests and requests to admit -- Plaintiff was able to expose Defendants' misconduct a little bit at a time. This work also included dealing with, *inter alia*, more than a dozen depositions, multiple expert witnesses, all of the Monell-related discovery, and voluminous document discovery.

---

[1]  Plaintiff has not sought time beyond the effective date of the offer of judgment served by the Defendants in March of 2010. Because the jury verdict did not exceed the offer of judgment, Plaintiff is not presently entitled to the additional time. That result could change, of course, if he is awarded a new trial on damages, either in this Court or, if necessary, in the appellate court.

The result of all of this work was persuasive to the jury, which ultimately credited Plaintiff's version over that of the defense. Under those circumstances, counsel's fees should be approved. See Garcia v. City of Chicago, No. 01 C 8945, 2003 WL 22175620 (N.D.Ill. Sept. 19, 2003) ("In the case at hand, were it not for the skill and determination of Garcia's counsel [Loevy & Loevy], the violations of Garcia's civil rights by the City proven by the evidence at trial would not have been established. Plaintiff achieved tremendous success in this litigation and should be fully compensated. The lodestar figure is a reasonable determination of this amount.").

Furthermore, unlike some cases involving discrete events, the events in this litigation spanned decades, thereby increasing the scope and time-intensity of the inquiries. As the Court saw at trial, the parties discovered and litigated nearly every meaningful event in Plaintiff's life. Overall, the amount of hours spent to that end over the past three years was reasonable, particularly given the extraordinary success. See Petersen v. Gibson, 2002 WL 31738798, *1 (N.D.Ill. Dec. 4, 2002) (Zagel, J.) ("Could one conclude that some of the lawyers spent too much time on one matter or another? Possibly, but I am not inclined to do so. . . The bottom line is, as Petersen says, compensation is sought 'for approximately 1,000 hours of attorneys' time over five years,' and I do not find that any of the time spent is unreasonable"), reversed on other grounds, Peterson v. Gibson, 372 F.3d 862 (7th Cir. 2004).

To provide the Court context, lead Plaintiff's counsel points out that in other cases where our firm has litigated fee petitions, judges have repeatedly upheld Loevy & Loevy's fee submissions as reasonable, approving them at extremely high percentages of the fees sought.

For example, Medina v. City of Chicago involved an excessive force case that settled before trial. Judge Matthew Kennelly struck only 1.75 hours from Loevy & Loevy's entire petition. 2001 WL 1104600 (N.D. Ill. Sept. 14, 2001).

In Garcia v. City of Chicago, 2003 WL 22175620 (N.D.Ill. Sept. 19, 2003), the plaintiff alleged excessive force by an off-duty police officer. After Loevy & Loevy won the trial, Chief Judge James Holderman approved Loevy & Loevy's request for $647,951 in attorneys' fees, which is more than $700,000+ in 2010 dollars. Despite virtually line-by-line objections, Judge Holderman struck a grand total of 2.5 hours from Loevy & Loevy's 2000+ hour fee petition.

The case of Kunz v. City of Chicago, No. 01 C 1753 involved a verdict fairly close to this one. After Plaintiff won the trial, Judge James Zagel ultimately approved Loevy & Loevy's entire fee petition of slightly more than 2,000 hours, or fees of $691,000, without striking one single hour. Kunz, 2008 WL 4876813, at *2 ("The case was vigorously and expensively defended, and the settlement offer that was made came after much had been spent to litigate the case. . .").

In Warfield v. City of Chicago, 05 C 3712, Judge Ruben

8

Castillo approved $624,387 in fees in a case with a verdict barely a third of that amount.  2010 WL 3303373 (N.D.Ill. Aug. 17, 2010).  The reductions were minimal, and were almost exclusively limited to a fourth trial attorney who played no substantive role.  Id.[2]

The same result has obtained in wrongful conviction cases. Last year, a district court judge in Missouri allowed every one of the 1,400 hours sought by Loevy & Loevy in another wrongful conviction case after a successful jury verdict, over-ruling every objection.  White v. McKinley, 2009 WL 813372 (W.D.Mo. March 26, 2009).

Likewise, in Dominguez v. City of Waukegan, Case No. 04-2907, Judge Milton Shadur approved every single hour sought in the $500,000+ fee petition where defense largely conceded reasonableness.

What all of this demonstrates is that Loevy & Loevy has a very long and well-established track record in judicial approval of fee petitions.  Courts have consistently found our Petitions reasonable and justified, and have approved almost all of our hours, overruling almost all objections.  There are exceptions, of course, but overall the pattern is clear and unmistakable.

---

[2]  Finally, in Lopez v. City of Chicago, 2007 WL 4162805 (N.D.Ill. Nov. 20, 2007), the Judge Bucklo case cited above, the court was called upon to adjudicate our fee petition on remand in a case over which she had not presided.  The Lopez plaintiff alleged he was held in an interview room for multiple days without a probable cause hearing, and the case was defended by two outside law firms, one of which was Jones Day.  Applying intense scrutiny to every City objection (which numbered in the hundreds), the court granted $819,577 out of the $888,592 sought.

The Petition in this case comes to less fees than virtually all of the foregoing examples; it is appropriate, and it should be approved.

## IV.  Plaintiffs' Counsels' Hourly Rates Are Reasonable And Should Be Approved

As with their hours, Plaintiffs' billing rates are set forth on the Joint Fee Statement, attached as Exhibit A.  As discussed below, all of the proposed rates are reasonable and supported, and should be approved.

### A.  The Prevailing Market Rates

Like most things, the market rate for attorney billing rates has gone up over time, but the last few years in particular have witnessed a considerable spike, leading to unprecedented law firm salaries and corresponding billing rates.  See, e.g., Exhibit I (articles).  As the attached affidavit of Bradly Block attests, the Chicago market presently pays top-notch, experienced litigators in the range of $400 to $700/hour.  See Exhibit J. For example, recent billing rates for litigators at a large firm in Chicago are as follows:

    1964 graduate: $685/hour

    1978 graduate: $575/hour

    1992 graduate: $505/hour

    1999 graduate: $440/hour

See Id. ¶¶ 3-4.

Against this backdrop, the purpose and intent of §1988 is to attract talented lawyers to civil rights endeavors.  By promising to award the prevailing hourly rates, lawyers who could otherwise

10

command high billing rates in commercial pursuits are encouraged to represent clients such as Plaintiffs. See Casey, 12 F.3d at 805 ("In order for such a policy [vindicating civil rights through private action] to be effective, Congress felt it appropriate to shift the true full cost of enforcement to the guilty parties to eliminate any obstacle to enforcement."), citing S. Rep. No. 1011, 94th Cong., 2d Sess. 5 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5913) ("It is intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases. . .").

Rates comparable to those from the private sector are routinely approved in civil rights litigation. See e.g. O'Sullivan v. City of Chicago, 484 F.Supp.2d 829, 838 (N.D.Ill. 2007) (relying on 2006 National Law Journal sample showing, e.g., that fourth-year associates at large firms bill up to $325 or $330/hour in 2006); Entertainment Software Ass'n v. Blagojevich, 05 C 4265, 2006 WL 3694851 (N.D. Ill. Aug. 9, 2006). For example, four years ago, Judge Kennelly approved rates at the following levels:

    1979 graduate: $585/hour

    1996 graduate: $425/hour

    2000 graduate: $340/hour

Id. at *2-*3. All of the Entertainment Software attorneys have impressive credentials to be sure, and all were practicing in constitutional law, their field of expertise. Id. But, as

11

discussed below, both of these factors are also true for Plaintiffs' counsel here.

### B.   The Laffey Matrix

The United States Attorney's Office for the District of Columbia has created what has become known as the Laffey Matrix to provide an official guideline for "reasonable" rates in fee-shifting cases.  Adcock-Ladd v. Secretary of Treasury, 227 F.3d 343, 347 n.3 (6th Cir. 2000) (describing Laffey Matrix as "an official statement of market-supported reasonable attorney fee rates").  According to the United States Attorney: "The matrix is intended to be used in cases in which a 'fee-shifting' statute permits the prevailing party to recover 'reasonable' attorney's fees."  See Explanatory Note, available at http://www.usdoj.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_7.html.  The matrix provides the following rate guidelines:

| Experience | 2007-2008 | 2008-2009 |
|------------|-----------|-----------|
| 20+ years | 440 | 465 |
| 11-19 years | 390 | 410 |
| Paralegals | 125 | 130 |

See http://www.justice.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_7.html.

The Laffey Matrix "is a concession by that office [the United States Attorney] of what it will deem reasonable when a fee-shifting statute applies and its opponent prevails and seeks

attorney fees." <u>Adolph Coors Co. v. Truck Ins. Exch.</u>, 383
F.Supp.2d 93, 98 (D.D.C. 2005). <u>See</u> <u>also</u> <u>Chanel, Inc. v. Doan</u>,
2007 WL 781976, *6 (N.D.Cal. March 13, 2007) (court's practice to
rely on the Laffey Matrix as reliable official data to determine
appropriate hourly rates) <u>Kormer v. Astrue</u>, 2009 WL 3152039 at *2
n.5 (D.Minn. September 24, 2009); <u>White v. McKinley</u>, 2009 WL
813372 at *7 (W.D.Mo. March 26, 2009).[3]

The Laffey Matrix as adjusted for the locality differential
would dictate rates for L&L attorneys of $426/hour for Jon Loevy
(who is seeking $425/hour), and $484/hour for Arthur Loevy and
William Hodes (who are seeking $475/hour and $400/hour,
respectively) and $343/hour in 2009 dollars for Russell Ainsworth
and Gayle Horn (who are now seeking $350/hour and $315,
respectively). Plaintiff's counsels' proposed rates are thus
either well below, or at a minimum, directly in line with, the
Laffey Matrix presumptions, and should thus be approved as
reasonable.[4]

---

[3]   Courts outside of Washington D.C. typically adjust the
Laffey Matrix for what is called the "locality pay differential."
<u>See</u> <u>Chanel, Inc.</u>, 2007 WL 781976, at *6-*7 (adopting the Laffey
Matrix rate, but adjusting them upward by 5% due to the locality
pay differential between California and D.C.); <u>In re HPL
Technologies, Inc. Securities Litig.</u>, 366 F. Supp. 2d 912, 921
(N.D. Cal. 2005) (adjusting the Laffey Matrix upward by 9% over the
Laffey Matrix figures give the pay differential for San Francisco).
The locality pay differential for the area where Loevy & Loevy
practices (Chicago) is 19.70% versus 15.98% for the D.C. area,
meriting a 4% increase over the Laffey figures. <u>Selph</u>, 2007 WL
433103, Appendix B at *13, citing Appendixes D & E and data located
on the United States' Office of Personnel Management webpage at
http://www.opm.gov/oca/05tables/indexGS.asp.

[4]   <u>See</u> <u>also</u> <u>Hadnott v. City of Chicago</u>, 2010 WL 1499473, *6
(N.D.Ill. April 12, 2010), citing <u>In re Trans Union Corp. Privacy
Litig.</u>, 2009 WL 4799954, at *19 (N.D.Ill. Dec. 9, 2009); <u>Catalan v.</u>

### C. Given Their Qualifications And Accomplishments, Plaintiffs' Counsels' Should Be Awarded Rates At The Upper Range Of Reasonable

Given the recent surge in legal billing rates generally, coupled with the civil rates recently awarded by other courts, Plaintiffs' counsels' awards are reasonable and should be approved.

### 1. Jon Loevy

Jon Loevy seeks $425/hour, which is substantially below both the rate he would earn under the private sector range set forth above, as well as the $440/hour (approximate) he would earn under the Entertainment Software scale referenced above. It is also less than the $426/hour presumption called for under the Laffey Matrix.

Now in his seventeenth year of practice, Mr. Loevy has been lead trial counsel for nearly 20 successful federal civil rights trials, resulting in combined career jury verdicts exceeding $85 million. See Exhibit B, Jon Loevy Aff. At one point, Jon Loevy won ten civil rights trials in a row, most involving very challenging fact patterns. Id. Thirteen times, he has won jury verdicts in excess of $1 million. Id. In addition to trial

RBC Mortgage Co., 2009 WL 2986122, at *6 (N.D.Ill. Sept. 16, 2009); Decker v. Transworld Sys., Inc., 2009 WL 2916819, at *5 (N.D.Ill. Sept. 1, 2009); Robinson v. City of Harvey, 2008 WL 4534158, at *7 (N.D.Ill. Oct. 7, 2008); Lopez v. City of Chicago, 2007 WL 4162805, at *8 (N.D.Ill. Nov. 20, 2007); Delgado v. Village of Rosemont, 2006 WL 3147695, at *5 (N.D. Ill. Oct 31, 2006); Sadler v. Barnhart, 2004 WL 419908, at *2-3 (N.D.Ill. Feb. 25, 2004). See also Arch v. Glendale Nissan, 2005 WL 1421140, *1 (N.D. Ill. June 7, 2005); Selph v. Bruno et al. & Assoc., LLC, 2007 WL 433103 (N.D. Ill. Feb. 2, 2007); Covington-McIntosh v. Mount Glenwood Mem. Gardens S., Inc., 2004 WL 2700482, *4 (N.D. Ill. Feb. 12, 2004); Embry v. Barnhart, 2003 WL 22478769, *2 (N.D. Ill. 2003).

skills, Jon Loevy is also an accomplished appellate lawyer,
having won more than a dozen cases in the Seventh Circuit.  All
of these highlights are set forth in more detail in Mr. Loevy's
affidavit.  Id.

Furthermore, Jon Loevy has built a very prominent and
successful civil rights law firm from scratch.  Only twelve years
removed from Jon Loevy's start as a solo practitioner operating
out of his apartment, the firm now employs 21 full-time lawyers
and a sizeable staff.  Id.   That is a lot of overhead.  A law
firm of that size is very expensive to operate (id.),
particularly given the number of pro bono and un-economical cases
that the firm pursues, consistent with its fundamental commitment
to civil liberties.

With respect to billing rates, Jon Loevy is a 1993 graduate
of Columbia Law School, where he was a senior editor on the Law
Review and the recipient of various prizes for academic
excellence.  Id.  If Jon Loevy still worked at Sidley & Austin
(where he spent almost two years), Brad Block's affidavit
suggests his billing rate based on year of graduation alone would
exceed $500/hour (adjusted for inflation).  See Exhibit J, ¶ 4.
The Laffey Matrix yields a rate of $426/hour.[5]

The rate sought for this litigation is $425/hour, which is
approximately the Laffey presumption.  The last five times that
Jon Loevy's rate has been adjudicated, it has been approved at

---

[5] Plaintiff's inflation calculations were performed using the
U.S. government's CPI calculator available at
http://data.bls.gov/cgi-bin/cpicalc.pl.

the following:

- $375/hour in 2007 by agreed compromise in <u>Dominquez v. Hendley</u>, No 04 C 2907.

- $395/hour in 2008 in <u>Robinson v. City of Harvey</u>, 2008 WL 4534158, *7 (N.D. Ill. Oct. 7, 2008).

- $395/hour in 2009 in <u>White v. McKinley</u>, 2009 WL 813372, *9 (W.D.Mo. March 26, 2009).

- $410/hour in 2010 in <u>Warfield v. Chicago</u>, 2010 WL 3303373 (N.D.Ill. Aug. 17, 2010).

- $450/hour in 2010 in <u>Dunn v. Chicago</u>, No. 04 C 6804 (blended rate for partners, established on November 4, 2010).

As Judge Lefkow observed in <u>Robinson</u> in 2008: "There can be no serious argument that the rates requested by the Loevy firm are not reasonable by comparison to [market rates]."  2008 WL 4534158, at *7.  Judge Lefkow continued, more than two years ago: "[T]he court is not unmindful of Jon Loevy's success in this case and his now established reputation as a singularly formidable trial lawyer in civil rights cases.  *The court has no doubt that were he employed by a large commercial firm, Mr. Loevy's billing rate would be more than $395."  <u>Id.</u> (emphasis added).

After a multi-year freeze, Jon Loevy's rate was raised to $410/hour, and then $450/hour earlier this month.  The $425/hour sought here is reasonable, and should be approved.

In further support, Jon Loevy has an actual billing rate. Attached as Exhibit K are three separate retainer agreements where Jon Loevy has been hired at the rate of $450/hour, including a post-conviction case on behalf of a prominent

attorney, a Section 1983 takings case on behalf of a real estate developer, and as counsel to the Transitional Administrator appointed by a federal judge to reform the Cook County Juvenile Detention Center.  These three engagements at $450/hour are strong evidence of an actual billing rate.

Further support for the rate sought comes from comments made by Judge Holderman seven years ago in Garcia v. Chicago, 2003 WL 22175620, *2-*3 (N.D.Ill. Sept. 19, 2003):

> The hourly rate of $295/hour which Jon Loevy has requested is a bargain for his services.  Jon Loevy is an outstanding trial lawyer.  His ability belies his years of experience, and he certainly should not be held in a lock-step position based on his law school graduation year with regard to his hourly rate.  **He clearly could command an hourly market rate of $325 to $350 because of his courtroom ability.**  Not only did Jon Loevy display tremendous advocacy skills during the trial before the jury, he handled all the matters involved in this litigation with great aplomb.  His case was well-organized.  The evidentiary progression was easy to follow.  His examinations of adverse witnesses [], and his dealing with the sometimes improper tactics of his opposing counsel, were highly professional.
>
> Jon Loevy's poise, analysis, and demeanor in front of the jury, as well as his rapier-like cross-examination style, are reminiscent of the trial skills displayed by some of the nationally recognized trial lawyers in this community when they were the age that Jon Loevy is now. . . Additionally, Jon Loevy's overall performance ranks among the finest displays of courtroom work by a plaintiff's lead trial counsel that this court has presided over in several years.  Because the court will cap Jon Loevy's hourly rate at the amount he requested, the court finds $295/hour to be reasonable.

Judge Holderman's statement that Jon Loevy could "clearly" earn $350/hour in 2003 dollars supports the rate sought here, once adjusted for inflation.

Finally, Mr. Loevy's rate of $425/hour is well in line for

top-end litigators with more than 17 years of experience.  <u>Neuros Co., Ltd. v. KTurbo Inc.</u>, 2010 WL 547599 (N.D.Ill. Feb. 9, 2010) ($560/hour for 1998 grad Joshua Yount); <u>Jones v. Ameriquest Mortg. Co.</u>, 2009 WL 631617, *4 (N.D.Ill. March 10, 2009) (Coar, J.) ($465/hour for 1991 grad Tara Goodwin); <u>Decker v. Transworld Sys., Inc.</u>, 2009 WL 2916819, *5-*6 (N.D.Ill. Sept. 1, 2009) (Mahoney, J.) ($394/hour for 1994 grad in FDCPA case); <u>Carr v. Tillery</u>, 2010 WL 1416007, *7 (S.D.Ill. March 31, 2010) ($645/hour for attorney Proujansky, five years ahead but with less experience); <u>Loudermilk v. Best Pallet Co., LLC</u>, 2009 WL 4350651, *2 (N.D.Ill. Nov. 25, 2009) (Mahoney, J.) ($415/hour for attorney Stilp, also five years ahead, but with less experience); <u>Catalan v. RBC Mortg. Co.</u>, 2009 WL 2986122, *6 n.8 (N.D.Ill. Sept. 16, 2009) ($400/hour for Steven Blonder, who graduated the same year as Jon Loevy and was a frequent opponent during high school debate).

### 3.   Arthur Loevy

The senior member of the firm, Arthur Loevy's role in this litigation, was limited to several dozen hours, most prominently, the deposition of the infamous Eddie Love, and overall supervision.  He seeks a rate of $470/hour, which he has been awarded by federal judges twice in the past two years.  <u>Robinson v. City of Harvey</u>, 2008 WL 4534158, *7 (N.D. Ill. Oct. 7, 2008) (awarding Arthur Loevy $470/hour); <u>White v. McKinley</u>, 2009 WL 813372, *9 (W.D.Mo. March 26, 2009) (same).

The requested rate is easily supported.  Arthur Loevy has been a member in good standing of the Illinois bar continuously

for four and a half decades since graduating from University of
Michigan Law School in 1963, and his impressive credentials are
set forth in his affidavit.  See Exhibit F.  His accomplishments
over his forty year legal career easily justify the $470/hour
rate he has already twice been awarded.  Indeed, the requested
rate is less than two-thirds of the $685/hour rate commanded by
big firm litigators who graduated after he did, and also well
below the amounts awarded by Judge Kennelly in Entertainment
Software for comparably experienced attorneys.  See also Carr v.
Tillery, 2010 WL 1416007, *7 (S.D.Ill. March 31, 2010) (awarding
$645/hour to a lawyer with 20 years less experience than Arthur
Loevy).

Finally, as far as actual billing rate, Arthur Loevy is also
being paid at even greater rate by private civil rights clients
in the cases mentioned in the discussion of Jon Loevy's rate,
supra.  The $470/hour rate he seeks here is reasonable and should
be approved.

### 3.   Russell Ainsworth

Russell Ainsworth's qualifications are summarized in his
affidavit.  See Exhibit E.  His role was limited in this case,
and he seeks the rate he was awarded earlier this year in
Warfield v. Chicago, 2010 WL 3303373 (N.D.Ill. Aug. 17, 2010).

As an eighth year lawyer, the Laffey Matrix for 2008/09
calls for $342/hour, adjusted for Chicago.  Re-adjusting for one
year of inflation, and the Matrix rate is almost exactly what he
seeks here, hardly an unjustified amount given his relative
experience as a litigator.  Cf. Robinson v. City of Harvey, 2008

19

WL 4534158, *7 (N.D. Ill. Oct. 7, 2008) (Citing 2007 National Law
Journal survey as evidence of eighth year associates billing
$385, $425, and $435-$510 at various firms).  It is hardly out of
line with the top end for attorneys with his year of graduation,
much less his level of experience.  See Krumwiede v. Brighton
Assoc., LLC, 2006 WL 2349985, *4 (N.D.Ill. Aug. 9, 2006) (hourly
rate of attorney Ostfeld, an eighth year, went from $330/hour in
2005 to $375/hour in 2006); Neuros Co., Ltd. v. KTurbo Inc., 2010
WL 547599 (N.D.Ill. Feb. 9, 2010) ($450/hour for 6th year
attorney Streicker); Catalan v. RBC Mortg. Co., 2009 WL 2986122,
*7 (N.D.Ill. Sept. 16, 2009) (Dow, J.) ($340/hour for attorney
Keogh, only two more years experience than Mr. Ainsworth); Carr
v. Tillery, 2010 WL 1416007, *7 (S.D.Ill. March 31, 2010)
($330/hour for fellow-2001 grad Luciano); Delgado v. Village of
Rosemont, No., 03 C 7050, 2006 WL 3147695 (N.D.Ill. Oct. 31,
2006) ($375/hour to a civil rights lawyer of comparable trial
experience, David Cerda).

     In sum, Mr. Ainsworth's rate is appropriate.  This is
particularly so in light of the new data about the marketplace
suggesting that litigators in the private sector with Mr.
Ainsworth's experience are now billing around $500/hour, and the
reality that lead counsel in civil rights cases frequently
receive right around the same amount sought here.  It is also
almost exactly what is called for by the Laffey Matrix.  Hadnott
v. City of Chicago, 2010 WL 1499473, *7 (N.D.Ill. April 12, 2010)
("We conclude that the Laffey Matrix is 'satisfactory evidence'
of the prevailing rate, so that the burden shifts to opposing

20

counsel to show why a 'lower rate is essential'").

### 4.   Gayle Horn

Ms. Horn seeks $295/hour, which is directly in line with the Laffey Matrix, which calls for $270/hour, adjusted to $281/hour for Chicago, for attorneys with four to seven years experience. See also Exhibit L (Judge Cherry awarding $250/hour to another member of L&L with the comparable experience).  Even though the $281/hour Laffey number is slightly lower than the $295/hour she seeks, her rate is nonetheless reasonable because (a) the listed Laffey Matrix rates are for 2008/09 and thus should be slightly bumped anyway; (b) she is closer to the top end of that Laffey experience category; and (c) her credentials stack up with anyone's (including the Entertainment Software attorneys).  See also Catalan v. RBC Mortg. Co., 2009 WL 2986122, *7 (N.D.Ill. Sept. 16, 2009) ($288/hour for attorney Burke last year, with almost the same experience as Ms. Horn).

### 5.   William Hodes

After graduating from Harvard, Mr. Hodes attended Rutgers Law School, where he graduated in 1969 with highest honors.  See Exhibit C.  He practiced law in the public and private sectors for nine years, and served as a Bigelow Teaching Fellow at the University Law School in 1978, before joining the faculty at the Indiana Law School full-time in Indianapolis from 1979 to 1999, except for the year he spent clerking for Ruth Bader Ginsburg on the United States Supreme Court.  Id.

Mr. Hodes retired from Indiana in 1999, becoming Professor Emeritus of Law the following Spring.  Id.  He is the co-author,

with Professor Geoffrey Hazard and Peter Jarvis, of a nationally-recognized treatise on legal ethics and other subjects.

Mr. Hodes established his law firm (The William Hodes P.C.) in 1999.  His trial practice is detailed extensively in his affidavit.  Id.

Mr. Hodes' rate of $400/hour is modest for a lawyer of his experience and accomplishments.  It is far less than is called for under the Laffey Matrix, and should be approved.  As with the senior Mr. Loevy, the requested rate is less than two-thirds of the $685/hour rate commanded by big firm litigators who graduated after he did.  See also Carr v. Tillery, 2010 WL 1416007, *7 (S.D.Ill. March 31, 2010) (awarding $645/hour to a lawyer with less experience).

### 6.  Paralegals

Plaintiff's attorneys' fees award encompasses the work of paralegals and investigators within L&L, as reflected in Exhibit G and H.  See Richlin Sec. Service Co. v. Chertoff, 53 U.S. 571 (2008) ("Attorney's fee," as used in the Civil Rights Attorney's Fees Awards Act embraces paralegal fees).  Loevy & Loevy made very good use of paralegal time to reduce the amount of attorney time.  The requested rate of $105 is reasonable and should be approved.  Carr v. Tillery, 2010 WL 1416007, *7 (S.D.Ill. March 31, 2010) (paralegal billing approved at $130 per hour).

## V.  Plaintiff's Costs Are Reasonable And Should Be Approved

Receipts reflecting the expenses claimed by Plaintiff are attached to Plaintiff's previously-filed motion, as well as to Exhibit C.  These expenses (which are reflected on the Joint Fee

22

Statement attached as Exhibit A) were reasonable and necessary, and should be approved.

### Conclusion

Unlike some attorneys -- including the defense attorneys in this case -- who receive renumeration win or lose, plaintiff civil rights attorneys frequently expend substantial time and out-of-pocket capital on cases without any compensation for their efforts.  Truth be told, all too often, undersigned counsel have devoted substantial sums of money and time in worthwhile cases in the past, only to receive nothing at all for those efforts.  Where, as here, however, the client does prevail, counsel deserves compensation commensurate with the risk and the degree of success.  This is particularly the case when the client's very success is due in large measure to his attorneys' diligent and time-consuming efforts on his behalf in the face of uncompromising resistance.

WHEREFORE, Plaintiff respectfully requests that the attorneys' fees and costs contained in the Joint Fee Statement attached hereto be approved in full.

RESPECTFULLY SUBMITTED:

/s Jon Loevy
_____
Attorneys for Plaintiff


Arthur Loevy
Jon Loevy
Heather O'Donnell
Pier Petersen
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900


W. William Hodes
The William Hodes P.C.
8125 Raven Rock Drive
Indianapolis, IN 46256
(317) 578-0258