UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| CHRISTOPHER PARISH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO:3:07-CV-452-RL |
| | ) | |
| | ) | |
| CITY OF ELKHART, INDIANA, AND | ) | |
| STEVE REZUTKO. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR FEES AND COSTS

Defendants Steve Rezutko and the City of Elkhart, by counsel, pursuant to Federal Rule of Civil Procedure 54(C) and this Court's order dated December 2, 2010 (Doc. #215), file their response in opposition to Plaintiff's Motion for Attorneys' Fees and Costs (Doc. #198), Memorandum in Support (Doc. #212), and supporting exhibits.

## I.  Procedural History

The instant case has a lengthy and complicated procedural history which is directly relevant to this Court's resolution of the pending request for fees and costs.  On September 24, 2007, Plaintiffs filed their Complaint in this action against named Defendants City of Elkhart, Steve Rezutko, Steve Ambrose, Tom Cutler, the County of Elkhart, prosecuting attorney Michael Christofeno, and various "John Does" of the City of Elkhart and its police department.  (Doc. #1).  In addition to the main Plaintiff, Christopher Parish ("Parish"), other named plaintiffs to this case were Parish's children Kylup Parish, Khadijah Parish, and Christopher Parish, his fiancé Leticia Gary, and his mother, Gloria Parish ("collectively, the consortium Plaintiffs"). (Id.).

1

In his Complaint, Parish asserted various claims including state law claims for false arrest, false imprisonment, intentional infliction of emotional distress and malicious prosecution, along with federal law claims under 42 U.S.C. 1983 and the Fourth Amendment ("the federal law claims"). (Id.). All five consortium plaintiffs attempted to make what were repeatedly referred to as "derivative claims" under Indiana law, while Parish's three children also made such claims under the federal statutes. (Id.; See also Docs. #37 at p. 3, #52).

On January 15, 2008, Plaintiffs' claims against Defendants County of Elkhart, Michael Christofeno, and the various "John Does" were voluntarily dismissed by stipulation of the parties. (Docs. #30, #83 at p. 18). On February 25, 2008, the remaining Defendants City of Elkhart, Rezutko, Ambrose, and Cutler filed their Motion to Dismiss Plaintiffs' claims based on statute of limitations. (Docs. #35, #36). On September 5, 2008, this Court granted Defendants' motion in part, thereby dismissing Parish's Fourth Amendment claim and all of his state law claims. (Doc. #42). The final Order regarding this motion reflected that final judgment should be entered as to all claims except Parish and his children's 42 U.S.C. 1983 claims. (Docs. #42, #48, #60). On April 19, 2009, Plaintiffs filed their Notice of Appeal with respect to the dismissed state law claims. (Doc. #63).

In the meantime, the parties continued litigating Plaintiffs' federal claims and initiated a separate process of briefing with respect to Defendants' Motion for Summary Judgment which was filed on March 16, 2009. (Docs. #57, #58, #58-1). In this motion and supporting documents, Defendants asked for the dismissal of all remaining claims in the case, including Parish's 42 U.S.C. 1983 claims as well as the children's federal claims which were reinstated during the course of the briefing. (Id.). On January 1, 2010, this Court entered its Opinion and Order on Defendants' Motion for Summary Judgment in which it explicitly dismissed any punitive damages claims against the City of Elkhart as well as the consortium plaintiffs' claims

in their entirety.  (Doc. #83).  The elimination of the claims of the consortium Plaintiffs was based on Parish's inability to show that the defendants' actions were directed at Parish's relationship with his children.  (Id. at pps. 21-22).  At the conclusion of this summary judgment proceeding, the only remaining Plaintiff was Parish and the only remaining claim was one under 42 U.S.C. 1983.  (Id. at p. 25).

On March 8, 2010, Defendants City of Elkhart, Rezutko, Ambrose, and Cutler made an Offer of Judgment to the plaintiff, including any claim for attorneys' fees and costs, in the total amount of $750,000.   (Docs. #197, #197-1).  This offer was not accepted and the parties continued with the process of litigating this claim.

On August 23, 2010, the Seventh Circuit Court of Appeals entered its order reversing this court's dismissal of Parish's state law claim for intentional infliction of emotional distress ("IIED") on the statute of limitations issue while affirming its dismissal of his state law claims for false arrest and false imprisonment.  (Docs. #96-1, #96-2).

Although the Court of Appeals' opinion was silent on whether the consortium plaintiffs maintained any claims, this issue was addressed when the Defendants filed their September 27, 2010 Motion to Dismiss the reinstated claims and subsequent briefing based on Plaintiffs' failure to comply with the Indiana Tort Claims Act and the defendants' immunity.  (Docs. #107, #108 #109, #110, #115).  As a result of this motion, the Court again dismissed Plaintiff's IIED claim based on immunity.  (Doc. #152).  It also dismissed any remaining claims of the consortium plaintiffs on the same basis.  (Id. at p. 11).  As of the Court's October 15, 2010 Order, the only remaining plaintiff was Christopher Parish and the only remaining claim was his 42 U.S.C. §1983 claim.   (Id. at p. 12).  At that time, Parish's claim still remained pending against Defendants City of Elkhart, Ambrose, Cutler, and Rezutko.  (Id.).  However, immediately before trial, Plaintiff stipulated to the dismissal of Defendants Ambrose and Cutler with prejudice.

(Doc. #162).

On October 19, 2010, a six-day jury trial began and on the evening of October 27, 2010, the jury returned a verdict in favor of the plaintiff and against the City and Officer Rezutko for compensatory damages in the amount of $73,125 and for punitive damages against Officer Rezutko in the amount of $5,000.  (Docs. #193, #196).  Judgment to this effect was entered on October 27, 2010 and docketed by the Clerk on November 1, 2010.  (Id.).  Plaintiff has since filed a Rule 59 Post-Trial Motion and requesting either 1) a new trial limited to the issue of compensatory damages, 2) an additur, or 3) a new trial on all issues.  (Docs. #205, #206).

On November 15, 2010, Plaintiff filed his Motion for Attorneys' Fees and Costs and Motion for Leave to File Memorandum in Support and Additional Supporting Documentation Within 14 Days.[1]  (Doc. #198).  The request for additional time was granted, over objection. (Doc. #215).   On November 29, 2010, Plaintiff filed a memorandum and supplemental documentation in support of this request.  (Docs. #211 through #211-6, #212, #213-1 through # 213-6).  Defendants oppose this motion for the reasons set forth below.

## II.  Argument

## 1.  Applicable Standards for Recovery of Fees and Costs

42 U.S.C. §1988 provides that the prevailing party in an action brought under 42 U.S.C. §1983 may, in the court's discretion, recover a reasonable attorney's fee as part of its costs. Sottoriva v. Claps, 617 F.3d 971, 974 (7th Cir. 2010).  A district court is granted "wide latitude" in setting a fee award that it deems reasonable, provided that justifies its decision by an explanation.  Id. at 975-976 (citing Divane v. Krull Elec. Co., 319 F.3d 307, 314 (7th Cir. 2003); Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)).  To qualify as a prevailing party for purposes

---

[1] Defendants have separately requested, and been granted, costs incurred subsequent to the March 8, 2010 Offer of Judgment.  (Docs. #197, #202).

of this statute, a civil rights plaintiff must obtain at least some relief on the merits of his claim. Farrar v. Hobby, 506 U.S. 103, 111 (1992).  Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement.  Id.  Even a plaintiff who recovers nominal damages is considered a prevailing party under 42 U.S.C. §1988.  Id. at 112.

Plaintiff is correct that the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  Riverside v. Rivera, 477 U.S. 561, 568 (1986)(citing Hensley, 461 U.S. at 426).  This figure, commonly referred to as the "lodestar," is presumed to be the reasonable fee contemplated by §1988, provided that the court excludes from this initial fee calculation hours that were not "reasonably expended" on the litigation.  Id. (citing Hensley, 461 U.S. at 434).  After this initial calculation is completed, a court should then take into account various other factors which may lead the court to adjust the lodestar upward or downward.  Id. (citing Hensley, 461 U.S. at 434).  These factors have been stated by the United States Supreme Court as: 1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  Id. at n. 3 (citing Johnson v. Georgia Highway Express, 488 F.2d 714, 717-719 (5th Cir. 1974)).  In short, the amount of the appropriate fee must be determined based on the facts of each case.  Hensley, 461 U.S. at 429.  The prevailing party has the burden of showing the reasonableness of the fee request.  Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 550 (7th Cir. 1999).

As to the amount of recovery, while any plaintiff who recovers an award, however small, is considered prevailing, the degree of the plaintiff's overall success goes to the reasonableness of a fee award and has been defined as "the most critical factor" in determining reasonableness. Farrar, 506 U.S. at 114 (citing Hensley, 461 U.S. at 436). In evaluating the plaintiff's overall success, the Seventh Circuit Court of Appeals typically looks to three different "relevant indicia": the extent of relief; the significance of the legal issue on which the plaintiff prevailed, and the public purpose served. Simpson v. Sheahan, 104 F.3d 998, 1001 (7th Cir. 1997)(citing Farrar, 506 U.S. at 112). The first factor bears the most weight, whereas the second factor only minimally advances a plaintiff's claim to fees. Id. (citing Maul v. Constant, 23 F.3d 143, 146 (7th Cir. 1994)).

In some cases, a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. Hensley, 461 U.S. at 435. In such a suit, even where the claims are brought against the same defendants – often an institution and officers, as in this case – counsel's work on one claim will be unrelated to his work on another claim. Id. Work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved and therefore should not be included in a fee calculation. Id. Further, even where claims are interrelated and a plaintiff prevails on only some of his claims, the district court may reduce the fee award by either 1) attempting to identify specific hours that should be eliminated or 2) reducing the award to account for the limited success. Sottoriva, 617 F.3d at 975 (citing Hensley, 461 U.S. at 436-37).

Recent cases in this district specifically note that a fee is reasonable, or not, only in relation to the plaintiff's own case, regardless of whether the support of civil rights litigation may be beneficial to the public weal. Cole v. Wodziak, 169 F.3d 486, 489 (7th Cir. 1999)(citing Burlington v. Dague, 505 U.S. 557 (1992)). Where the recovery of private damages is the

purpose of the litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to damages sought. <u>Farrar</u>, 506 U.S. at 114 (citing <u>Riverside</u>, 477 U.S. at 585). If a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable rate may be an excessive amount. <u>Id</u>. (citing <u>Hensley</u>, 461 U.S. at 436). When recovery is low enough in relation to the demand, the judge may jettison the lodestar apparatus and chose an appropriate fee using other means. <u>Cole</u> 169 F.3d at 487 (7th Cir. 1999). Cases in the Seventh Circuit have held that recovering less than 10% of the demand is a good reason to curtail the fee award substantially. <u>Id</u>. at 489. In some circumstances, a plaintiff who formally "prevails" under §1988 should receive no attorney's fees at all. <u>Farrar</u>, 506 U.S. at 115.

Federal law is clear and Plaintiff does not dispute that a civil rights defendant is not liable for attorney's fees incurred after a pretrial settlement offer, where the judgment recovered by the plaintiff is less than the offer. <u>Rivera</u>, 477 U.S. at 580 (citing <u>Marek v. Chesny</u>, 473 U.S. 1 (1985)). In addition, courts have routinely considered settlement offers in determining an award of reasonable attorney's fees in a particular case. <u>See</u>, <u>e.g.</u> <u>Prince v. Village of Round Lake Beach</u>, 754 F.Supp. 643, 644-645 (N.D. Ill. 1991); <u>Karraker v. Rent-A-Center, Inc.</u>, 2008 U.S. Dist. LEXIS 36145, *13 (C.D. Ill. 2008).

Finally, as to the issue of costs, under 28 U.S.C. § 1920, a prevailing party may recover (1) fees of the clerk and marshal, (2) fees for transcripts, (3) fees for printing and witnesses, (4) fees for copies necessarily obtained for use in the case, (5) docket fees, and (6) compensation of court appointed experts and interpreters. While F.R.C.P. 54(d) allows for the recovery of costs by the prevailing party, the decision of the amount to award is left to the discretion of the district court. <u>Solar v. Waite</u>, 989 F.2d 251, 254-55 (7th Cir. 1993). In assessing a bill of costs, the district court must determine whether the costs are allowable; and if so, whether they are both

reasonable and necessary, and whether the documentation of the costs is adequate.  Id. at 255; Moore v. University of Notre Dame, 22 F.Supp.2d 896, 912 (N.D. Ind. 1998).  Of note, one court in this district has very recently reduced an award of costs under the same "degree of success" basis outlined above.  See, Minix v. Canarecci, 2010 U.S. Dist. LEXIS 24283, *25 (N.D. Ind. 2010).  The party challenging the costs requested bears the burden of affirmatively showing that the party seeking an award of costs is not entitled to recover those costs requested.   Rivera v. City of Chicago, 469 F.3d 631, 636 (7th Cir. 2006).

**2.  Defendants are entitled to an elimination or reduction of Parish's requested attorney's fees based on the results achieved.**

i.  Limited success - claims and parties

In light of this case's procedural history and the law which governs this Court's analysis of the fending fee petition, it is immediately clear that the results of this case merit a substantial downward departure from the total "lodestar" claimed by Plaintiff, if not a complete denial of an award of fees.  As an initial matter, Plaintiff's Motion and supporting Memorandum conspicuously fail to address the fact that Plaintiff started this suit with many claims and many parties, virtually all of which had been eliminated by the time of trial either by the court or by stipulation.  Specifically:

Plaintiffs ***did not prevail*** as to the following claims:

1.  Fourth Amendment violation

2.  False arrest

3.  False imprisonment

4.  Intentional infliction of emotional distress (dismissed on two separate occasions)

5.  Malicious prosecution

6.  Any purportedly freestanding "consortium" claims

7.  Plaintiffs' claims for punitive damages as to City of Elkhart

8. Plaintiffs' claims for compensatory damages related to lost wages, profits, or earning capacity (jury instruction on this element of damages withdrawn)

Plaintiffs **_did not prevail_** as to the following Plaintiffs:

1. Kylup Parish, Khadijah Parish, and Christopher Parish, Jr. (Parish's children)

2. Leticia Gary (Parish's girlfriend and/or fiancé)

3. Gloria Parish (Parish's mother)

Plaintiffs **_did not prevail_** as to the following Defendants:

1. Michael Christefeno

2. County of Elkhart

3. Steve Ambrose

4. Tom Cutler

5. Various "John Does" of the City of Elkhart and its police department

In summary, one Plaintiff out of five (Christopher Parish) was ultimately deemed a "prevailing party" as to one claim out of seven or eight (42 U.S.C. §1983 due process violation) against two out of the seven original defendants (Rezutko and City of Elkhart). This is *exactly* the type of "prevailing party" situation in which a simple application of the lodestar constitutes inappropriate compensation.

The majority of the claims that were ultimately dismissed in this action certainly fall into the category of being "distinctly different claims for relief that were based on different facts and legal theories." See, Hensley, 461 U.S. at 435. Specifically, Parish's §1983 claim against the City of Elkhart and Rezutko was based entirely on the alleged denial of his due process right to a fair trial. The facts relevant to this claim were limited to those surrounding *the trial itself*, including whether evidence gathered by Detective Rezutko was appropriately disclosed to Parish and whether the City had a policy or custom of permitting due process deprivations.

In contrast, Parish's Fourth Amendment claim as well as his state law claims for false

arrest and false imprisonment were based on the actions and investigations leading up to Parish's *arrest*.  The crux of these claims was that the shooting had actually incurred in the parking lot adjacent to the Kershner apartment and that the officers had "fabricated" the apartment crime scene so they could falsely implicate Kershner.  (Doc. #1, ¶¶14, 17).[2]  The remaining state law claim for IIED, while perhaps somewhat closer to the surviving §1983 claim from a factual basis, is still easily distinguishable in that it must constitutes a distinct legal theory which, if permitted to go to trial, would have provided an additional potential basis for the recovery of damages.   Even further afield were the factual and legal theories regarding the claims for malicious prosecution, which centered on the prosecutor's alleged coercion and manipulation of witnesses both before and during trial and Elkhart County's policy or custom of permitting this type of misconduct.  (Id. at ¶¶25-26, 35-37).   The dismissed consortium plaintiffs' claims, likewise, rested on distinct legal and factual theories from Parish's.  (See, Id. at ¶¶28-30).  The dismissal of these claims completely eliminated these parties' ability to become "prevailing parties" in their own rights, and rendered irrelevant any emotional strain, mental anguish, or monetary damages they claim to have suffered.  Of course, even to the extent that the factual basis for some of Plaintiff's unsuccessful claims may be interrelated to the prevailing §1983 claim, a reduction of Plaintiff's award is still permissible and warranted in this case where the overall degree of success is relatively minor.   <u>See, e.g.</u>, <u>Sottoriva</u>, 617 F.3d at 975 (citing <u>Hensley</u>, 461 U.S. at 436-37).

While Plaintiff's fee affidavits are not itemized with sufficient specificity to determine exactly how much time was spent on each and every claim, the information that is available reveals that counsel spent a significant amount of litigation time pursuing unsuccessful claims. Specifically:

---

[2] While this theory was alleged in the complaint and actually argued before the Court of Appeals, it was completely abandoned by the time of trial, presumably because it was deemed irrelevant to the remaining due process claim.

- Attorney Jon Loevy's fee affidavit reflects at least 17 hours spent on initial research regarding the Indiana law claims (3/15/07, 3/16/07, 3/18/07, 5/15/07, 3/11/08, ); 5.5 hours researching and discussing the status of the consortium plaintiffs' claims (11/13/08, 2/2/09); 13.25 hours in preparation of a Rule 59 motion to reinstate the consortium plaintiffs' claims (1/6/09, 1/8/09, 1/26/09, 2/3/09, 2/4/09); and 4.75 hours on the appeal regarding the state law claims (12/28/09, 1/4/10, 2/9/10, 2/11/10), for a total of 40.5 hours or $17,212.50 spent on clearly unrelated, unsuccessful claims.

- Attorney William Hodes' fee affidavit is even less specific, but it reflects at least 1.2 hours of research spent on research related to the malicious prosecution claims (10/20/07) and 47.1 hours on the appeal regarding the state law claims (3/26/09, 4/12/09, 4/15/09, 4/16/09, 4/16/09, 4/17/09, 4/18/09, 4/18/09, 11/30/09, 12/3/09, 12/5/09, 12/6/09, 12/11/09, 12/12/09, 12/13/09, 12/14/09, 12/15/09, 12/16/09, 12/17/09, 2/5/10, 2/6/10, 2/7/10, 2/8/10), for a total of 48.3 hours or $19,320.00 spent on clearly unrelated, unsuccessful claims.

- Attorney Gayle Horn's fee affidavit reflects at least 6 hours spent on Defendants' attempted dismissal of the state law claims (3/5/08, 3/6/08, 3/11/08) and 14.5 hours on the appeal regarding the state law claims (12/28/09, 1/28/10, 2/8/10, 2/9/10), for a total of 20.5 hours or $6,047.50 spent on clearly unrelated, unsuccessful claims.

- Attorney Russell Ainsworth's fee affidavit reflects at least .75 hours spent researching the consortium Plaintiffs' claims (1/5/09) and 2.5 hours spent working on the appeal regarding the state law claims (4/7/10, 4/8/10)[3], for a total of 3.25 hours or $1,137.50 spent on clearly unrelated, unsuccessful claims.

- Attorney Arthur Loevy's fee affidavit reflects at least .5 hours spent on the malicious prosecution claims (5/15/2007) and .5 hours on the consortium plaintiffs' claims (11/13/2008), for a total of 1 hour or $470.00 spent on clearly unrelated, unsuccessful claims.

- Paralegals Anne Gottschalk and Eva Nagao's fee affidavits reflect 12 hours spent on the appeal regarding state law claims (Gottschalk 12/28/2009, 2/9/2010, Nagao 12/28/2009) for a total of 12 hours or $1,260 spent on clearly unrelated, unsuccessful claims.[4]

These entries alone total 125.55 hours of time and $45,447.50 in fees.

However, this breakdown does not even come close to representing the amount of time actually billed toward the pursuit of Plaintiffs' unsuccessful claims, in that counsel's fee affidavits utilize "block billing" which fails to specify by claim the time spent on counsel's

---

[3] Additionally, these entries are dated *after* the March 8, 2010 Offer of Judgment, and should therefore be eliminated on this ground as well.

[4] Additionally, Paralegal Eva Nagao listed three (3) entries dated *after* the March 8, 2010 Motion for Costs, which should therefore be eliminated. These entries reflect 6.5 hours on 10/7/2010, 10/17/2010, and 10/18/2010, and total $682.50.

extensive briefing regarding Defendants' initial Motion to Dismiss or their subsequent Motion for Summary Judgment.[5]   In light of this, a reduction of the lodestar to account for Plaintiffs' small degree of success as to his claims is appropriate.

ii.  Limited success – compensation sought versus received

In addition, as noted above, before setting any fee award in this case this Court must give primary consideration to the amount of damages awarded as compared to the damages sought. Farrar, 506 U.S. 114 (citing Riverside, 477 U.S. at 585).  Plaintiffs originally sought damages not only on behalf of Christopher Parish, but also on behalf of five other individual plaintiffs.  For Parish's §1983 claim alone, even after withdrawing his claim for lost wages and earning capacity during the course of trial, Plaintiff's counsel asked the jury for $14.5 million in compensatory damages and between $20,000 and $50,000 in punitive damages.  Had the consortium plaintiffs and numerous dismissed claims remained in play at the time of closing argument, the amount requested would almost certainly have been substantially higher.

In the end, however, Plaintiff was awarded $73,125 in compensatory damages and $5,000 in punitive damages – approximately 0.54% of the total amount requested during closing argument and approximately 10% of the amount offered for settlement of this case.  According to Plaintiff's separately pending Rule 59 motion for post-trial relief, this jury award "is approximately **104 times** lower than the average for comparable cases, **86 times** lower than the median, **16 times** lower than the next lowest verdict, and more than **307 times** less than the highest."  (Doc. #206 at p. 13).  Plaintiff's assertion in the present brief that this trial was an "extraordinary success" simply cannot be reconciled with his references to this verdict as "absurdly inadequate" elsewhere.  (Docs. #212 at p. 7; #206 at p. 7).  Clearly, Plaintiffs' ultimate success at trial was limited to such an extent that a downward adjustment or even a complete

---

[5] A fee applicant should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." Riverside, 477 U.S. at n. 4 (citing Hensley, 461 U.S. at 437).

elimination of attorney's fees is appropriate.  <u>See</u>, <u>Sottoriva</u>, 617 F.3d at 975; <u>Prince</u>, 754 F.Supp. at 644-645.

### iii.  Limited success - significance of legal issue and public purpose served

While the defendants believe the extent of the relief obtained by Plaintiffs, the most important indicia of success, clearly weighs in favor of a reduction or elimination of the lodestar total, in the interest of completeness the remaining two indicia – significance of legal issue and public purpose served – should be addressed as well.  <u>See</u>, <u>Simpson</u>, 104 F.3d at 1001 (citing <u>Farrar</u>, 506 U.S. at 112).

There can be no serious dispute that the due process right to a fair trial is a significant legal right.  However, the Seventh Circuit has suggested that a plaintiff's failure on his remaining claims should also be factored into its analysis of this indicia.  <u>See</u>, <u>Briggs</u>, 93 F.3d at 361.  In light of the fact that Parish and the other original plaintiffs were ultimately unsuccessful on the vast majority of their claims, Defendants contend that this factor should weigh in their favor.  At best, however, this factor "only minimally advances Plaintiff's claim to fees."  <u>See</u>, <u>Simpson</u>, 104 F.3d at 1001 (citing <u>Maul</u>, 23 F.3d at 146).

As to the third prong, Plaintiff, in his brief, cites to cases which reference the social benefits of successful civil rights litigation.  However, in this particular case it is clear that the verdict represents a victory (such as it is) for Plaintiff personally, and not for the public at large. <u>See</u>, <u>Id</u>.  Plaintiff did not obtain an injunction or any other systemic relief that would prevent future violations, but simply received an award of damages as compensation for the specific allegations of his complaint.  This favor, therefore, also weighs in favor of a reduction or elimination of the lodestar award of attorney's fees.

### iv.  Defendants' requested fee and cost reduction for limited success, in summary

Any claims of social benefits or vindicated rights aside, it is clear that the plaintiffs'

attorneys have charged for and want to be awarded for fees for work on behalf of the six original in this lawsuit in their efforts to obtain monetary compensation for their perceived wrongs to the tune of millions of dollars.   Instead of success, the majority of the plaintiffs' claims were dismissed and the remaining Plaintiff received an award that was only 10% of the Defendants' March 8, 2010 offer to settle.   Additionally, Plaintiff chose to reject an extremely favorable Offer of Judgment made approximately eight months pre-trial, forcing all involved to sustain the additional time and money costs of protracted litigation.   In light of the results in this case, Plaintiff's request for $410,225.00 in attorney's fees is far from being "reasonable."

In light of case law suggesting that a plaintiff recovering less than 10% of the demand should likely be subject to a substantial reduction in his §1988 fee award, Defendants respectfully request that the instant case – where the plaintiff has covered less than .5% of the demand – is one where a plaintiff who has formally "prevailed" under §1988 should receive no attorney's fees or costs at all.   In the alternative, Defendants ask that this Court deduct the $45,447.50 worth of work clearly dedicated to the pursuit of unsuccessful claims and then apply a substantial and appropriate reduction to the remaining requested fees and costs similar to the ratio of reduction between the amount offered to the plaintiff to settle and the amount awarded by the jury.[6]

### 3.   In the alternative, Defendants are entitled to a reduction of Parish's requested attorney's fees and costs based on various other issues

As explained above, Defendants do not believe the result in this case supports *any* award of fees to Plaintiff despite his technical status as a "prevailing party."   However, should this

---

[6] Defendants would also note that the attorneys from the Loevy law firm have billed for their services in minimum time increments of .25 hours, a practice noted by some courts to be "inherently inflationary on the resulting bill." See, e.g., In re: Scott R. Kowalski, 2009 Bankr. LEXIS 532, *13-*14 (N.D. Ill. 2009).   This style of billing charges fifteen minutes of work for even the most basic correspondence review/transmittal or the shortest telephone conference.   Defendants ask that this Court take these issues into account when calculating an appropriate fee reduction.

Court decide to award some portion of the requested fees to Plaintiff, Defendants would ask the Court to take into consideration the additional issues discussed below.

i.  Excessing billing on Plaintiff's Summary Judgment Response

In evaluating a request for fees, the district court should exclude as "not reasonably expended" hours that are excessive, redundant, or otherwise unnecessary.  Firestine v. Parkview Health Sys., Inc., 374 F.Supp.2d 658, 664 (N.D. Ind. 2005); Stark v. PPM Am., Inc., 354 F.3d 666, 674 (7th Cir. 2004).  Plaintiff's counsel's billing at the summary judgment stage of this case is all three.  A review of the relevant fee affidavits demonstrates the following time was spent on the briefing in question:

| Name | Total Hours Spent | Rate | Amount related to SJ |
|---|---|---|---|
| Jon Loevy | 63 | $425.00 | $26,775.00 |
| William Hodes | 41.4 | $400.00 | $16,560.00 |
| Gayle Horn | 3 | $295.00 | $885.00 |
| Russell Ainsworth | 1 | $350.00 | $350.00 |
| Arthur Loevy | 2.5 | $470.00 | $1,175.00 |
| 4 Paralegals | 57 | $105.00 | $5,985.00 |
| **Total** | **167.9** | | **$51,730.00** |

As an initial matter, the factual and procedural history set forth above reveals that nearly all Plaintiffs' claims were ultimately dismissed, with the sole exception of Christopher Parish's §1983 due process claim.  Therefore, majority of the time and money spent on the briefing in question relates to claims which were ultimately unsuccessful was "otherwise unnecessary" and should be excluded on the bases set forth in section 2(1), above.[7]  However, even had the plaintiffs been wholly successful in defeating the defendants' request for summary judgment, the billings submitted for this briefing are clearly "excessive and redundant" and should be reduced on these grounds.

Because the affidavits are generally vague, it is difficult to tell exactly who did what in

---

[7] It seems particularly untenable for Plaintiffs to recover fees related to time spent arguing against summary judgment on behalf of Defendants Cutler and Ambrose, who they then voluntarily dismissed.

the briefing process. Defendants presume some level of duplication occurred, in light of the fact that five different attorneys and four different paralegals were involved in this process. Regardless of how duties were broken down, 110.9 hours of attorney time and 57 hours of paralegal time is clearly excessive for responding to summary judgment, particularly in light of the fact that the vast majority of these briefings were completed by experienced counsel charging more than $400 per hour who "probably have a wealth of authority and guides to assist them." See, Holoubek v. UNUM Life Ins. Co. of Am., 2007 U.S. Dist. LEXIS 5929, *7 (W.D. Wis. 2007). Also relevant is the fact that by the time Defendants' motion for summary judgment was filed in this case, the parties had already gone through an *extensive* period of briefing involving Defendants' Motion to Dismiss, and were therefore necessarily familiar with the facts, law, and documents surrounding this dispute. (See, Docs. #35, #36, #37, #38, #41, #42).

In light of all these issues, Defendants respectfully suggest that the time deemed reasonably spent on the summary judgment phase of this case should not exceed 40 hours (at $425/hr) of attorney time and 15 hours (at $105/hr) of paralegal time for a total amount of $18,575, resulting in a deduction of $33,155.00 for hours not reasonably expended.

ii.  Excessive hourly rate of William Hodes

It is undisputed that Plaintiff's lead trial counsel, Jon Loevy, is an experienced trial attorney specializing in civil rights who has received fee awards in the general vicinity of the $425 hourly rate being requested. The same is not true, however, for Attorney William Hodes, who seeks 252.1 hours of compensation at a rate of $400 per hour.

Mr. Hodes' affidavit makes clear that after nine years of practice, he taught law full time from 1979 to 1999. (Doc. #211-2 at ¶2). Since returning to private practice, his focus has been "the law of lawyering," which appears to entail a focus on legal ethics and malpractice. (Id. at ¶¶8-9). For his primary area of concentration, Mr. Hodes rarely charges $600 per hour,

16

occasionally charges $500 per hour, and more often charges $350-$450 per hour.  (Id. at ¶14).  At times, Mr. Hodes has also been asked to assist in either preparing or assessing the advisability of filing a Writ of Certiorari.  (Id. at ¶16).  For this secondary area of concentration, Mr. Hodes has almost always charged $350 per hour.  (Id.).  Under special circumstances, he sometimes charges $300 per hour and has once or twice charged $250 for personal friends or close colleagues.  (Id. at ¶14).

While Mr. Hodes has apparently handled "several cases involving violations of civil rights, invasion of privacy, and similar torts," the only solo jury trial referenced in Mr. Hodes' fee petition is one in Indiana state court involving legal malpractice.  (Id. at ¶¶8, 10).  It appears that Mr. Hodes' work over the last ten years has been largely focused on giving expert testimony, as opposed to actively engaging in litigation.  (Id.).  Further, he concedes that the Parish case did not involve his area of concentration.  (Id. at ¶¶10, 15).

Despite having substantially less trial and civil rights experience than any other attorney who has requested fees in this case, Mr. Hodes asks for an hourly rate of $400, which is more than he typically receives for his secondary area of concentration, more than he often charges for his primary area of concentration, and only $25 per hour less than lead counsel in this case.  Additionally, unlike the lawyers at the Loevy firm, Mr. Hodes has not produced any satisfactory evidence beyond his own affidavit showing that the requested rate is in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.  Spegon, 175 F.3d at 550 (citing Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984)).  An attorney can make this showing either by submitting affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work or by submitting evidence of fee awards the attorney has received in similar rates.  Id. at 566.  Here, despite this Court's grant of additional time for supplementation of Plaintiff's fee request, Mr. Hodes has

provided neither.  In light of Plaintiff's failure to meet his burden to adequately support the requested fee rate of $400, Defendants respectfully request that this Court reduce Mr. Hodes hourly rate for lodestar purposes to $250, a rate at the bottom of Mr. Hodes self-defined pay scale, resulting in a corresponding deduction in the requested fees and costs.

iii.  Inappropriateness of fees and costs related to Eddie Love

Defendants acknowledge that, as noted by Plaintiff, "not all time" spent in litigation "is equally productive," and that lawyers will "spend some time in blind alleys."  Kurowski v. Krajewski, 848 F.2d 767, 777 (7th Cir. 1988).  However, as noted above, compensation is *not* appropriate for hours which are not reasonably expended.  Stark, 354 F.3d at 674.

In this case, *all time* spent relative to potential witness Eddie Love constitutes time which was not reasonably expended.  As this Court will recall, Mr. Love was for many months presented as the lynch pin of Plaintiff's case.  As one of the witnesses to the shooting, Mr. Love has changed his testimony on multiple occasions to serve the exigencies of the moment.  His statement to the police formed the basis for Parish's arrest, and his subsequent reversal of his story regarding the facts of this case formed the basis for Plaintiff's response in opposition to Defendants' request for summary judgment.  (Docs. #68, #71).  His testimony likewise was relied upon by the Court of Appeals in overturning this Court's dismissal of the IIED claim. (Doc. #96-2).  Right up to the time of trial, the parties argued about what Mr. Love had said and what he could say at trial.  Ultimately, however, Plaintiff declined to call Mr. Love as a witness despite the fact that Mr. Love was known to be in the company of the Loevy firm's investigator, Elliot Slosar, during the week of trial.[8]

As demonstrated by the breakdown contained in attached Exhibit A, Plaintiff's counsel

---

[8] Of note, during the relevant period of time, Mr. Love had failed to appear in court in Elkhart County and as a result had an outstanding warrant.  Had the City known of Mr. Love's whereabouts, he would have been arrested and thus made equally available to Defendants as a witness.

requests $23,881 in fees and $4,193.94 relative to its endeavors related to Mr. Love.[9]  In light of the fact that Plaintiff chose not to rely on Mr. Love's testimony at trial despite having him immediately accessible, Defendants can only assume that – despite using his testimony to stir the pot pre-trial – Plaintiff never ultimately intended to rely on Mr. Love's testimony to support his claim to damages.  As such, all pre-trial time dedicated to investigation and interaction of Mr. Love was neither necessary nor reasonably expended and a deduction in the amount of $28,075.19 is appropriate.

iv.  Unsupported request for fees of of investigator Elliot Slosar

While Plaintiffs cite to authority supporting their requested rate of $105 for paralegals, their brief is silent on the issue of Elliot Slosar, their "investigator," for whom $105 is also requested.  Further, Mr. Slosar's affidavit is devoid of any information regarding his rate in past cases, and no affidavits are designated to support the reasonableness of this rate.  Absent any case law or designated documentation in support of either the recovery of investigator fees or the requested $105.00 per hour as the prevailing "market rate" for such services, Defendants contend that a substantial reduction of the requested fee award on this basis is appropriate.  See, Lasswell v. City of Johnston City, 436 F.Supp.2d 974, 982 (S.D. Ill. 2006).

v.  Unrecoverable investigatory costs

Investigatory service expenses are not recoverable costs.  EEOC v. SWP. Inc., 2000 U.S. Dist. Lexis 11256; citing State of Ill. v. Sangamo Const. Co., 657 F.2d 855, 864 (7th Cir. 1981) (citing Wahl v. Carrier Mfg. Co., Inc., 511 F.2d 209, 216-218 (7th Cir. 1975), holding that expenses incurred in making investigations are not recoverable).  Plaintiff's Bill of Costs contains numerous entries for investigatory service expenses and for costs without sufficient

---

[9] At times, Mr. Slosar's reconnaissance trips combined Eddie Love with one or more other individuals.  However, it is unclear whether any of these individuals were actually located, and with the exception of Jermaine Bradley who was called as a witness by Defendant's counsel, none were ever called to testify.

documentation, as set forth the attached Exhibit B.  (Docs. #198, #198-1).  These investigatory costs total $5,878.96.

Further, the plaintiff's bill of costs also contains duplicate expenses for a trip to Corbin, KY for witness depositions.  (Doc. #198-1).  Those depositions were taken on September 24, 2008, and the Defendants do not object to travel expenses related to depositions on that day.  However, the plaintiff also claims airfare, US Airways, $505.00, for an August 7, 2008 trip to Kentucky for depositions.  (Id.).  No depositions took place that day, so that expense should not be recoverable.  Therefore, the Defendants request that the Court disallow an additional $6383.96 of the costs requested by the Plaintiff on these bases.

### III.  Conclusion

In the final analysis, if the plaintiffs' attorney fees are not discounted in this case, they will be awarded fees for being unsuccessful.  This is not something that §1988 contemplates.  This court and the court of appeals were in agreement that most of their theories of liability and all the plaintiffs other than Christopher Parish should be dismissed from this litigation. While Mr. Parish is a "prevailing party" as to one of his claims, the facts and law of this case illustrate the inappropriateness of the mechanical application of the total "lodestar" amount.  Because of the plaintiffs' limited success on their claims as well as the various other issues outlined above, Defendants respectfully request that this Court deny Plaintiff's request for attorney's fees and costs in its entirety.  In the alternative, Defendants request a substantial reduction in the amount awarded by the Court.

NEWBY, LEWIS, KAMINSKI & JONES, LLP

By:  /s/   Martin W. Kus
    Martin W. Kus #5377-46
    Matthew J. Hagenow, # 22378-46
    Michelle L. Shirk, # 27343-46
    Attorneys for Defendants
    916 Lincolnway, P. O. Box 1816
    La Porte, IN  46352-1816
    Telephone (219) 362-1577


HUNT SUEDHOFF KALAMAROS, LLP

By: /s/ Lynn E. Kalamaros
    Lynn E. Kalamaros
    P. O. Box 4156
    205 W. Jefferson Blvd., Ste. 300
    South Bend, IN 46634-4156
    Telephone (574)232-4801

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| CHRISTOPHER PARISH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO:3:07-CV-452-RL |
| | ) | |
| | ) | |
| CITY OF ELKHART, INDIANA, AND | ) | |
| STEVE REZUTKO. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

---

**PROOF OF SERVICE**

---

I hereby certify that on the 13th day of December 2010, I electronically filed a complete copy of the Defendants' Response in Opposition to Plaintiff's Motion for Fees and Costs and this Proof of Service with the Clerk of the Court using the CM/ECT system which sent notification of such filing to the following:

Andrew S. Williams, Awilliams@hsk-law.com
Dinah H. Sampson, dsampson@hsk-law.com
Elizabeth C. Wang, elizabethw@loevy.com
Gayle M. Horn, gayle@lovey.com
Jon Loevy, jon@loevy.com
Lynn E. Kalamaros, lkalamarso@hsk-law.com
W. William Hodes, wwh@hodeslaw.com

**NEWBY, LEWIS, KAMINSKI & JONES, LLP**

By: /s/ Martin W. Kus
Martin W. Kus, #5377-46