UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHRISTOPHER PARISH,           )
                              )
                Plaintiff     )
                              )
        vs.                   )        CAUSE NO. 3:07-CV-452 RLM
                              )
CITY OF ELKHART and           )
STEVE REZUTKO,                )
                              )
                Defendants    )

<u>OPINION and ORDER</u>

This case has been remanded solely for trial on the issue of compensatory damages. <u>Parish v. City of Elkhart</u>, 702 F.3d 997, 1003 (7th Cir. 2012). At trial before Judge Rudy Lozano in 2010, plaintiff Christopher Parish sought damages from the City of Elkhart and its police officer, Steve Rezutko, for, among other things, being prosecuted, convicted, and imprisoned for crimes Mr. Parish says he didn't commit — the October 1996 attempted murder and armed robbery of Michael Kershner. The court of appeals held that in light of that claim, evidence of events after Mr. Parish's criminal trial that cast doubt on his guilt (such as recantations and DNA tests), while not relevant to the defendants' liability, were relevant to damages and so should not have been excluded. On remand, both sides are entitled to ask the jury to decide whether Mr. Parish suffered the sort of mental suffering an innocent man experiences in prison or, alternatively, the suffering of a man who, while guilty of the crime, was unfairly convicted.

The court heard arguments on a variety of evidentiary issues on September 16. The case is set for trial on November 12.

I

At the hearing on the motions in limine, the parties informed the court that Mr. Parish and Officer Rezutko have reached a settlement in which the claim against Officer Rezutko will be dismissed. That leaves the City of Elkhart as the only defendant. Officer Rezutko withdrew his motion in limine, and Mr. Parish withdrew that portion of his motion that sought to prevent what he called "tag team" cross examination. The City withdrew that part of its motion to determine admissibility that went to whether the defendants acted maliciously.

A.

Many of the issues presented in the parties' motions in limine aren't matters in dispute, and the court grants the motions to that extent. As to the following matters, the attorneys and witnesses shall avoid reference without first addressing the matter of admissibility outside the jury's hearing:

- Personal information about Officer Rezutko.

- Reference to settlement negotiations, to the extent made inadmissible by Federal Rule of Evidence 408.

- Reference to insurance or lack of insurance, to the extent made inadmissible by Federal Rule of Evidence 411.

- Mr. Parish's "common law marriage."

- "Golden rule" jury argument.


B.

The City clarified at the motions hearing that its evidence will be directed at one of three factual propositions: (i) Mr. Parish's mental suffering was not what it would be for someone with less experience with the criminal justice system or criminals; (ii) because Mr. Parish committed the crimes for which he convicted, his mental suffering was not what it would be for someone innocent of the crime for which he was imprisoned; and (iii) the City was not the cause, or at least not the sole cause, of Mr. Parish's damages.

Most, but not all, of the remaining issues in the evidentiary motion deal with evidence that looks to Mr. Parish's guilt or innocence of the shooting of Mr. Kershner. The proceedings ordered by the court of appeals will not be the same as what was tried in the 2010 trial. In light of the insufficient damages award in 2010 and the reasons for it, Mr. Parish's guilt or innocence is now a fact "of consequence in determining the action," FED. R. EVID. 401, so facts that might not have been relevant to what Officer Rezutko knew during the investigation, prosecution, and trial might be relevant in the compensatory damages phase of the trial. On the other hand, since the liability phase focused not on what was actually true, but on what Officer Rezutko believed to be true, different rules of admissibility govern evidence making guilt or innocence more probable or less

probable. For example, second-hand evidence of what a person said might have been admissible to show what Officer Rezutko knew, but might not be admissible to prove the truth of the second-hand evidence. The motions in limine address the relevancy evidence, and today's relevancy rulings assume, without ruling, that the offering party will find a route to admissibility.

The extent of Mr. Parish's mental suffering is another fact "of consequence in determining the action," FED. R. EVID. 401, so such evidence is relevant, with admissibility being subject to Rule 403, among other rules.


1.

The City seeks a ruling that evidence of what the City describes as Mr. Parish's "other arrests, convictions, incarcerations, and bad acts" is relevant. At the hearing, the City explained that the motion refers to (i) Mr. Parish's thirteen juvenile arrests, (ii) Mr. Parish's two juvenile adjudications (one for battery and another for fleeing a police officer), and (iii) Mr. Parish's gang membership. The City doesn't offer the evidence for impeachment purposes under Rules 608 or 609. Instead, the City points to Cobidge v. City of Chicago, 651 F.3d 780 (7th Cir. 2011), for the proposition that these are quality-of-life sorts of matters that go to the amount of mental suffering a person would suffer during eight years of imprisonment. The Cobidge court considered a survivor's claim for lost guidance and companionship occasioned by constitutional torts his mother, and reasoned that the loss of guidance and companionship of a drug-addicted and oft-

4

imprisoned parent is a very different loss than if the parent weren't frequently high and/or imprisoned. 651 F.3d at 784. The court doesn't read <u>Cobidge</u> as broadly as the City does.

Neither the holding nor the reasoning of <u>Cobidge</u> reaches this case. First, none of Mr. Parish's family seek damages for loss of his companionship and guidance; only Mr. Parish seeks damages. Second, juvenile arrests and adjudications (and, without more, gang membership) don't have an effect on enjoyment of life similar to drug addiction and imprisonment. Third, the City's theory assumes an equivalence between a juvenile arrest and an arrest for attempted murder, and nothing in this record or the law supports such an assumption. Fourth, mental suffering from the arrest itself appears to be nothing more than a sliver of Mr. Parish's damages claim, which encompass, not simply a booking process, but eight years of maximum security imprisonment.

Mr. Parish's purported gang membership presents a separate issue. The topic arises only indirectly: a newspaper reported that at a contempt hearing to address Eddie Love's failure to appear at Mr. Parish's state trial, Mr. Love said he was afraid of Mr. Parish because they were in the same gang. As the court understands it, neither the name nor the nature of the "gang" was reported, but in light of Mr. Parish's youth at the time of the shooting and trial (he was eighteen years old), jurors are likely to understand the term as a reference to people involved in guns, drugs, and violence. Our court of appeals cautions district courts that gang affiliation evidence carries a substantial risk of unfair prejudice

5

— a jury might draw inferences concerning the person's violent and unlawful character. *See* United States v. Lewis, 910 F.2d 1367, 1372 (7th Cir. 1990) ("We do not pretend that the fact that Lewis belonged to the Travelling Vice Lords street gang was not damaging to him in the eyes of the jury. Most street gangs suffer from poor public relations."). Gang membership can be admissible anyway if it's shown to have legitimate probative value, United States v. Ozuna, 674 F.3d 677, 682-683 (7th Cir. 2012), but the City wants to present the evidence only to show Mr. Parish's character. Even Cobidge didn't countenance evidence to show character; the evidence in Cobidge went to what the survivor lost, not to the type of person the decedent was.

The court is unpersuaded by the City's arguments for admissibility of Mr. Parish's juvenile arrests and adjudications and purported gang membership. The court denies point 1 of the City's motion for preliminary determination of the admissibility of evidence and grants Mr. Parish's Motions 2 and 3 to bar that evidence. Before any attorney or witness addresses Mr. Parish's "other arrests, convictions, incarcerations, and bad acts," counsel shall address the anticipated evidence with the court outside the jury's hearing.

## 2.

The second point of the City's motion for preliminary determination of the admissibility of evidence seeks an order that evidence of Mr. Parish's guilt in the Kershner shooting is admissible. As a general matter, Mr. Parish agrees, as must

the court. If Mr. Parish seeks damages compensating him for the wrongful imprisonment of an innocent man, evidence that Mr. Parish was a guilty man is likely to be probative. Mr. Parish, though, says he doesn't know what evidence the City's motion might include apart from photo identifications by Ms. Cannell and Mr. Kershner.

Some of what the City seems to have in mind is apparent from other aspects of the motions in limine. The City might present identification testimony from Jermaine Bradley, who was present when Mr. Kershner was shot. That identification would be relevant: by placing Mr. Parish at the scene of the shooting, the evidence would make it more likely that Mr. Parish was guilty. There might well be other objections to the evidence if Mr. Bradley doesn't testify, but the identification would be relevant.

Mr. Bradley testified at the state trial, but apparently he was a poor witness. The prosecution returned him to the stand and elicited testimony that Mr. Parish had threatened him during a break in the criminal trial. Mr. Parish seeks to exclude evidence of such a threat. Mr. Parish says that no one else heard the threat, and Mr. Bradley isn't a credible witness. All of that might be true, but when weighing the relevancy of a piece of evidence, the court assesses the probative value of the evidence if the jury will believe it. Evidence isn't inadmissible simply because a party disputes it. The City says evidence of the threat is admissible to show Mr. Parish's consciousness of guilt on the state attempted murder charge. Mr. Parish says the threat evidence is too ambiguous

to be used for that purpose — the innocent, no less than the guilty, don't want people testifying that they are guilty. The jury might agree with Mr. Parish's view, but whether a threat occurred is a matter for the jury to decide. In <u>United States v. Johnson</u>, 624 F.3d 815, 820-821 (7th Cir. 2010), the government had recorded phone calls between the defendant in jail and an associate on the outside. The government contended that in those calls, the defendant directed his associate to convey a threat to a witness. The defendant disputed the meaning of the call, and at sentencing, the judge agreed with the defendant's interpretation. Still, admission of the evidence at trial was affirmed because at trial, the interpretation was for the jury, not the judge.

If evidence of the alleged threat to Mr. Bradley is otherwise admissible, Rules 402 and 403 don't require exclusion.

The City also might want to present evidence that Eddie Love identified Mr. Parish as one of the robbers. Eddie Love didn't testify at Mr. Parish's criminal trial or at the 2010 civil trial. Mr. Love testified at the separate state criminal trial of Keith Cooper, Mr. Parish's co-defendant in the state criminal prosecution. At that trial, Mr. Love said Mr. Parish was one of the robbers. Mr. Parish seeks to exclude evidence of that identification if Mr. Love doesn't testify. On this point, Mr. Parish doesn't argue relevancy; he seeks to exclude the identification evidence unless Mr. Love testifies at trial. In response, the City said it intends to try to have Mr. Love testify at trial. Accordingly, the court grants Mr. Parish's motion in limine insofar as it seeks to exclude evidence of Mr. Love's identification except by way of Mr.

Love's testimony. Again, if counsel wish to present such evidence, they must first discuss it with the court outside the jury's hearing.

Beyond the statements of Mr. Love and Mr. Bradley, the "gang" evidence, and Mr. Parish's juvenile arrests and adjudications, the City hasn't identified any other evidence it says shows Mr. Parish's guilt of the shooting. Since this will be a retrial, the court orders the City to discuss any other evidence of Mr. Parish's guilt or innocence, and any evidence of Mr. Love's or Mr. Bradley's statements other than through their testimony at trial, outside the jury's hearing before mentioning it in front of the jury.


3.

As already noted, the Indiana Court of Appeals decided that Mr. Parish's trial counsel had rendered constitutionally deficient assistance at the criminal trial. The City wants to present evidence along those lines to prove that its violation of Mr. Parish's constitutional rights wasn't the proximate cause of Mr. Parish's suffering arising from the conviction and sentence because trial counsel's performance was a superseding cause. Such evidence or argument would be inconsistent with the 2010 jury's verdict on liability and so would be inconsistent with the scope of the remand. Judge Lozano instructed that jury:

> To succeed on his claim against the City of Elkhart for failure to train or supervise, Christopher Parish must prove each of the following things by a preponderance of the evidence:

1.  The City of Elkhart's training program was not adequate to train its officers to properly handle recurring situations;

2.  Policy-making officials, including former Police Chief Dennis Bechtel, knew that more training and/or supervision was needed to avoid the likely deprivations of the due process right to a fair trial alleged by Plaintiff, or that this was obvious to policy-making officials; and

3.  *The City of Elkhart's failure to provide adequate training and/or supervision proximately caused the deprivation of Christopher Parish's due process right to a fair trial.*

Court's Instruction No. 35 (emphasis added) [doc. 191]. The verdict for the plaintiff shows that the jury necessarily found each of those — including proximate causation — to have been proven.

Liability under 42 U.S.C. § 1983 is joint and several. If, as the 2010 jury found, the City caused damages by violating Mr. Parish's constitutional rights, the City is liable for all of those damages, even if another tortfeasor also caused damages. Thomas v. Cook County Sheriff's Dep't, 604 F.3d 293, 311 (7th Cir. 2010). Finding Mr. Parish's trial counsel to have been a joint tortfeasor wouldn't affect the damage verdict against the City; it would only add a pocket from which Mr. Parish might collect.

Causation has been resolved. Evidence going to joint or superseding causation is irrelevant and so is inadmissible under Federal Rule of Evidence 402. The court denies the relief sought in point 3 of the City's motion to determine admissibility. The jury will be told before the trial about the actions the Indiana Court of Appeals took in Mr. Parish's criminal case. If any attorney or witness

10

wants to expand on that instruction, a hearing outside the jury's hearing is required.

## C.

The City asks the court to forbid the use of the term "exonerated" when referring to Mr. Parish. The City says the Indiana Court of Appeals vacated Mr. Parish's conviction because his trial was unfair; it didn't "exonerate" Mr. Parish in the sense of finding him innocent or even not guilty. Mr. Parish says the use of "exonerate" is permissible because the burden of defending a criminal case ultimately was lifted from his shoulders.

The court plans to give the jury a preliminary instruction telling the jury what has gone before and what remains for this jury to do. That instruction will be intended to explain what the court of appeals (and the county prosecutor after that) did. The instruction will explain that this jury might have to decide whether Mr. Parish was guilty, and that question hasn't been answered in any previous fair proceeding. Following that, counsel are free to use the verbs of their choice and to object to an adversary's use of a particular verb. Objections will (at first) be handled by the court re-reading that portion of the preliminary instruction.

The court denies the portion of the City's motion in limine seeking preclusion of the verb "exonerate."

## D.

11

Mr. Parish asks the court to forbid arguments that are inconsistent with the 2010 verdict on liability, and the City asks the court to forbid argument during opening statement. Those requests are too vague to support an injunctive order. If an attorney thinks an opposing attorney is making an argument during opening statement or that is inconsistent with the 2010 verdict, the court will, if it sees things the same way, sustain an objection. The court denies that portion of Mr. Parish's motion in limine that seeks to preclude arguments inconsistent with the 2010 verdict and that portion of the City's motion that seeks to preclude argument during opening statement.


II.

What follows is the court's first stab at an introductory preliminary instruction, given before jury selection, to tell the jury what it needs to know about what has gone before and what it will have to decide in this trial. The court invites, and will give full consideration to, suggestions for improvement and objections accompanied by suggestions for improvement.

Before I explain what the jury will be asked to do in this case, I have to give you some background because several things have already been resolved and decided.

The events leading up to today began on October 29, 1996, when two men demanding money and drugs barged into an apartment in Elkhart. At least one of the men was armed. In the

course of that robbery, one of the men shot Michael Kershner in the chest. Mr. Kershner was one of the people in that apartment. The Elkhart City Police Department placed Officer Steve Rezutko in charge of the investigation. On October 31, Elkhart police arrested Christopher Parish. Mr Parish was charged with armed robbery and attempted murder. The case went to trial, the jury found Mr. Parish guilty, and he was sentenced to 30 years in prison.

In 2005, the Indiana Court of Appeals reversed Mr. Parish's conviction. The court of appeals didn't decide whether Mr. Parish was guilty or not guilty. The court of appeals decided that the trial had been unfair, not because of anything the police or prosecutor did or didn't do, but rather because Mr. Parish's attorney didn't provide Mr. Parish with the level of representation that the constitution requires. The Indiana Court of Appeals didn't decide anything that this jury will be asked to decide.

In earlier proceedings in this case, it has been determined that Officer Rezutko intentionally violated Mr. Parish's constitutional right to due process during his investigation of the Kershner shooting. It has already been determined that Officer Rezutko used an unnecessarily suggestive identification procedure that resulted in an unreliable identification of Mr. Parish, that Officer Rezutko knowingly withheld material and exculpatory evidence that would have

13

undermined the credibility (believability) of the prosecution witnesses against Mr. Parish or would have otherwise tended to show that Mr. Parish was innocent of the charges, and/or that Officer Rezutko deliberately created false evidence or statements tending to falsely implicate Mr. Parish in the crime by means of improper coercion, manipulation, and/or outright fabrication.

It also has been determined in earlier proceedings in this case that the City of Elkhart, for whose police department Officer Rezutko worked, had a policy of permitting the types of due process violations seen here or had a custom of condoning this type of due process violation that was so persistent and widespread that it was the City's standard operating procedure.

It has also been determined that Officer Rezutko's violation of Mr. Parish's constitutional right to due process, and the City's policy or custom of allowing or condoning constitutional violations of that sort, caused Mr. Parish mental and emotional pain and suffering, and the City is liable to Mr. Parish for an amount of damages that will fairly compensate him for that injury.

As I said, those matters have been decided already in other proceedings. This jury won't be asked to reconsider any of those things, and, in fact, it would be wrong for this jury to reconsider any of those things. This jury is going to be asked only to decide the

14

amount of damages that will fairly compensate Mr. Parish for what happened to him.

Now, this jury is going to hear about more than what Mr. Parish experienced. Mr. Parish and the City of Elkhart believe that it might matter to the jury deciding damages whether Mr. Parish was actually guilty or innocent of the crimes he was charged with, so the jury will hear evidence about that, and the jury might choose to decide that during its deliberations. Ultimately, though, the jury in this trial will be asked only to decide the amount of damages that will fairly compensate Mr. Parish for what happened to him as a result of his constitutional right to due process being violated.

Again, the court welcomes suggestion for improvement and affords the parties four weeks within which to do so.

## III.

For the foregoing reasons, the court:

1. GRANTS IN PART and DENIES IN PART the plaintiff's motions in limine:

   (a) Motions 1, 2, 3, and 5 [docs. 273, 274, 275, and 277] are GRANTED;

(b) Motions 6, 7, and 8 [docs. 278, 279, and 280] are GRANTED except to the extent they address the trial testimony of Eddie Love or Jermaine Bradley; and

(c) Motions 4 and 9 (docs. 276 and 281) are DENIED.

2. GRANTS IN PART and DENIES IN PART the City of Elkhart's motion in limine [doc. 267]:

(a) the motion is granted as to points 1-4; and

(b) the motion is denied as to points 5-6.

3. DENIES the defendants' joint motion to determine admissibility [doc. 269].

4. GRANTS defendant Rezutko's oral motion to withdraw his motions concerning the admissibility of evidence [doc. 265].

4. TENDERS a proposed explanation to the jury venire of what has gone before and what this jury will be asked to do. The parties are AFFORDED until October 16, 2013 within which to make suggestions and objections.

SO ORDERED.

ENTERED:  ___September 18, 2013___


  _/s/ Robert L. Miller, Jr._____
  Judge, United States District Court

16